[No. E000091. Fourth Dist., Div. Two. July 17, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSE JUAREZ SANCHEZ, Defendant and Appellant.

COUNSEL

Arthur E. Cooper, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick R. Millar, Jr., and Jeffrey J. Koch, Deputy Attorneys General, for Plaintiff and Respondent.

Christopher N. Heard as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

**RICKLES, J.**—The defendant Jesse Juarez Sanchez was found guilty by a jury of one count of robbery. He was sentenced to state prison for the middle term of three years. The execution of sentence was stayed and he was placed on probation with certain terms and conditions, including a period of incarceration.

Sanchez appeals, contending the trial court erred in: (1) ruling that his juvenile court adjudication could be used for impeachment purposes; and (2) permitting rehabilitation of a witness through the use of prior consistent statements. Sanchez does not dispute the sufficiency of the evidence to support the jury verdict. The facts will be discussed as necessary to resolve his other contentions.

I

Sanchez correctly contends the trial court erred in ruling his prior juvenile court adjudication could be utilized for impeachment purposes. He is wrong that this ruling constituted prejudicial error.

The trial court found that Sanchez' recent juvenile adjudication of felony conduct (burglary) met both the *Beagle* and constitutional tests for admissibility. (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]; Cal. Const., art. I, § 28, subd. (f).) At the same time, it declined to allow an adjudication of theft of a vehicle (Veh. Code, § 10851) for impeachment purposes. The burglary was committed by Sanchez when he was almost 18 and the vehicle theft when he was 15. The *Beagle* analysis, though helpful in evaluating prejudice, is irrelevant unless the Constitution changed existing law. We need not tarry too long over this issue. Article I, section 28, subdivision (f), provides in pertinent part: "Any prior *felony conviction* of any person in any *criminal proceeding,* whether adult or juvenile, shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding." (Italics supplied.)

This language by its terms precludes the use of juvenile adjudications for impeachment. Juvenile adjudication is a civil and not a *criminal proceeding* even though due process requires proof beyond a reasonable doubt and that criminal rules of evidence be utilized. A juvenile's delinquency may consist of felony activity, but an adjudication as such is not a *felony conviction.* (See *People* v. *Jackson* (1980) 28 Cal.3d 264, 311 [168 Cal.Rptr. 603, 618 P.2d 149]; *People* v. *Gomez* (1957) 152 Cal.App.2d 139, 143 [313 P.2d 58].) "As section 203 states, '[a]n order adjudging a minor to be a ward of

the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding.' [Fn. omitted.]" (*In re Joseph B.* (1983) 34 Cal.3d 952, 955 [196 Cal.Rptr. 348, 671 P.2d 852].) We conclude Sanchez' juvenile adjudication of burglary is neither a felony conviction nor did it occur in a criminal proceeding, therefore, the court's ruling is error.

Sanchez' contention this error is prejudicial requires a different result. First, the trial court weighed the factors in *Beagle* and with full knowledge defendant would decline to testify found the probative value outweighed the prejudicial effect. Had the juvenile adjudication been a prior criminal conviction, the ruling of the court would have been correct.

Second, we are not required to speculate as to what Sanchez' testimony would have been had he testified. Sanchez' testimony may be gleaned from statements made by his attorney at time of sentencing. He indicated, from the flow of the evidence during trial, he believed Sanchez should not testify and should rely on the defense asserted—mistaken I.D. He then changed gears and said if Sanchez had not feared impeachment he would have testified and his testimony would have been consistent with the latest probation report.

The latest probation report revealed Sanchez' defense would have been: (a) he and the codefendant were going to the local market for purposes of picking up some beer and running out without paying for it, (b) the codefendant had a toy rifle and defendant had no weapon, (c) defendant remained outside of the store while the codefendant went in, (d) he saw the codefendant take a 12-pack of beer and set it on the counter then walk behind the counter and point the gun at one of the clerks, (e) defendant went in and told the codefendant he should leave before the police came, (f) the codefendant took approximately $200 from the cash register, cigarettes and beer, (g) they left the store and fled in opposite directions, and (h) he did not participate in and received no money from the robbery.

The state of the evidence makes it difficult, if not impossible, to believe the jury would have been conned by this implausible story. Three witnesses identified Sanchez as a participant in the robbery. Two of the witnesses were inside the store and testified *Sanchez* was the person with the gun. *Sanchez* pointed the gun at one of the witnesses, told her to get behind the counter and said, "If you move, you're dead." He pointed the gun at the other witness and told her to "open the cash register and don't make a move." She opened the cash register at his demand. One of these witnesses testified Sanchez had a gun with a taped barrel, a taped stock and a broken trigger guard and that he had a gold earring in one ear. The testimony of

the witnesses was internally consistent. Their testimony was corroborated by a police officer. The police officer had gone to Sanchez' house before the robbery to investigate a disturbance call. During the investigation, he saw a toy gun with a taped barrel, a taped stock and a broken trigger guard. Sanchez also had a gold earring in his left ear. Sanchez indicated the gun belonged to his son.

We conclude a result more favorable to Sanchez would not have resulted had he testified. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

## II

Sanchez' second contention that the trial court erred in permitting rehabilitation of a witness by using prior consistent statements is without merit.

The prosecution used a portion of a preliminary hearing transcript of one of the witnesses for the express purpose of rehabilitation. Sanchez' counsel had attempted to impeach this witness by indicating her testimony at trial was different from statements given to a police officer. The suggested impeachment went to several minor matters.

The People attempted to rehabilitate the witness by demonstrating her testimony at the preliminary hearing was consistent with her trial testimony even though at odds with the statement made to the police officer.

Even assuming the trial court's ruling allowing the rehabilitative evidence was erroneous, the error would be harmless. The inconsistent statements of this witness were so inconsequential they were not mentioned by defense counsel during closing argument. Moreover, we have made an independent evaluation of the witness' testimony and conclude the use of the rehabilitative evidence would not have affected the outcome. (*People* v. *Kent* (1981) 125 Cal.App.3d 207, 217 [178 Cal.Rptr. 28]; *People* v. *Watson, supra,* 46 Cal.2d 818.)

Judgment affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 31, 1985. Kaus, J.,* and Grodin, J., were of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.