[No. A025828. First Dist., Div. One. Jan. 22, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ANDREW CORNELIUS JACKSON, Defendant and Appellant.

COUNSEL

Ruth Spear, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eugene W. Kaster and Kristofer Jorstad, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

NEWSOM, J.—Appellant was convicted of aggravated assault (Pen. Code, § 245, subd. (a)), with an enhancement for use of a firearm (Pen. Code, § 12022.5) on the following evidence.

Appellant drove past the family home of the victim, Larry Johnson, on December 18, 1982, while the latter was working on his car. According to Johnson, appellant momentarily stopped and asked if he wanted to buy some speakers. Johnson replied, "Hell no! Get the hell away from my house!" The two men then exchanged scurrilous epithets, after which they squared off to fight.

Appellant's version of the incident was that, while speaking to a mutual acquaintance, Tyrone Gibson, about the sale of speakers, Johnson interrupted the negotiations by exclaiming, "Get the shit away from my mother's house!" complemented by a threat to "beat [appellant's] ass."

Following the squabble appellant left the scene, to return about half an hour later accompanied by his brother and a loaded shotgun. Appellant allegedly placed the shotgun behind the seat of his brother's truck for his own protection.

Shouting abusive expletives, appellant challenged Johnson to a fist fight. The latter then approached appellant who in turn ran back to the truck and retrieved the shotgun.

Appellant testified that when the two men were four to five feet apart, Johnson pulled a knife from his rear pocket, holding it at his side but pointed it at appellant. It was at this point that appellant ran to fetch the shotgun.

Upon observing the weapon, Johnson fled up the stairs to his residence. Appellant fired the gun three times. A buckshot charge hit the exterior wall of the apartment, not injuring Johnson, although his mother testified that appellant was aiming up the stairs at Johnson.

Appellant testified that he fired twice into the air only to scare Johnson, and had no intent to hit him. He fled after firing the shots, knowing that he had done "something wrong."

Officer Carmichael of the Richmond Police Department found two discharged shotgun shells in the street and one on the sidewalk.

## I.

Appellant complains that the trial court committed prejudicial error by denying his motion to exclude evidence of prior robbery and forgery convictions suffered while he was a minor. Appellant's contention is predicated upon Welfare and Institutions Code section 1772, which provides, in pertinent part, that "[e]very person honorably discharged from control by the Youthful Offender Parole Board who has not, during the period of control by the authority been placed by the authority in state prison shall thereafter be *released* from *penalties* and *disabilities* resulting from the offense or crime for which he or she was committed . . . ." (Italics added.) The parties entered into a stipulation that a valid order of dismissal had been entered as to appellant's prior convictions pursuant to section 1772.

■ The initial inquiry is whether impeachment is a *penalty* or *disability* within the meaning of Welfare and Institutions Code section 1772, thus precluding use of a qualifying prior felony conviction for that purpose. Section 1772 does not define the term "penalties and disabilities," and consequently we must look to the purpose and objectives of the statute to determine its meaning. (*People* v. *Grubb* (1965) 63 Cal.2d 614, 620 [47 Cal.Rptr. 772, 408 P.2d 100].)

Section 1772 is contained in the Youth Authority Act (Welf. & Inst. Code, §§ 1700-1906), the goal of which is to rehabilitate rather than punish youthful offenders. (Welf. & Inst. Code, § 1700; *People* v. *Redman* (1981) 125 Cal.App.3d 317, 323 [178 Cal.Rptr. 49]; *People* v. *Getty* (1975) 50 Cal.App.3d 101, 113 [123 Cal.Rptr. 704].) Thus, the objectives of the Act are to be served, section 1772 must be liberally construed to protect the youthful offender from any subsequent adverse impact resulting from use of a conviction. The goal of rehabilitation might very well be compromised if a prior conviction imposes any burden upon the youthful offender.

In our view, while the use of a prior conviction to impeach the credibility of a witness may not amount to a "penalty," at least in terms of having a punitive effect, a "disability" results when the youthful offender cannot testify free from the taint of such an offense. The use of the offense, then, surely may hinder presentation of a defense in a criminal prosecution by

dissuading the defendant from testifying on his own behalf, thus causing a form of legal incapacity and disqualification.

No published case has yet defined the term "penalties and disabilities" in Welfare and Institutions Code section 1772. However, the effect of identical language in former Penal Code section 1203, paragraph (5) upon admissibility of a prior conviction for impeachment purposes was treated in *People v. Mackey* (1922) 58 Cal.App. 123 [208 P. 135]. Prior to 1927, paragraph (5) of Penal Code section 1203 provided that every defendant who "fulfilled the terms of his probation . . . shall thereafter be released from all *penalties* and *disabilities* resulting from the offense or crime of which he has been convicted." (Italics added.) Noting that it dealt with "strong and direct" language requiring "broad and far reaching construction," the court concluded that "the legislature intended by the enactment of section 1203 that no convicted person discharged after probation thenceforth should be regarded as one possessed of the degree of turpitude likely to affect his credibility as a witness." (*Id.*, at pp. 129-131.)[1]

We similarly conclude that by releasing defendants from all "penalties and disabilities" attached to the offense committed, section 1772 precludes use of a prior conviction under that statute for purposes of impeachment.

## II.

The recent enactment of Proposition 8, the so-called "Victim's Bill of Rights," now codified in article I, section 28 of the California Constitution, does not change this result. In *People* v. *Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111], our high court recently attempted to reconcile the dilemma presented by apparently contradictory language in subdivisions (d) and (f) of section 28[2] by deciding "that—always subject to the trial court's discretion under section 352—subdivision (f) authorizes use of any felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty." While the court failed to list such qualifying felonies, it is concluded that when a prior conviction is found to exhibit "moral turpitude," the trial court must exercise its discre-

---

[1]In 1927, section 1203, currently sections 1203.4 and 1203.4a, was amended to specifically provide for use of a prior conviction for impeachment purposes after discharge from probation. Section 1772 was not similarly amended, a fact of significance noted by our high court in *People* v. *Navarro* (1972) 7 Cal.3d 248, 279 [102 Cal.Rptr. 137, 497 P.2d 481].)

[2]Subdivision (d) states that "relevant evidence shall not be excluded in any criminal proceeding . . ." but that "[n]othing in this section shall affect any existing statutory rule of evidence relating to privilege or hearsay, or Evidence Code sections 352, 782 or 1103." Subdivision (f) provides in pertinent part: "Any prior felony conviction of any person in any criminal proceeding . . . shall subsequently be used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

tion under Evidence Code section 352 and exclude such evidence if it is marginally relevant and unduly prejudicial. (*Id.*, at pp. 306, 312; see also *People* v. *Boyd* (1985) 167 Cal.App.3d 36, 45 [212 Cal.Rptr. 873].)

■ Assuming that appellant's prior robbery and forgery convictions evince the requisite "readiness to do evil," to qualify them for admission under *Castro*'s nebulous "moral turpitude" standard, the prejudice attached to the admission of such evidence is sufficiently onerous to require its exclusion under a section 352 analysis. Welfare and Institutions Code section 1772 manifests a strong public policy that those persons honorably discharged from the Youth Authority have been rehabilitated and should no longer suffer the "penalties and disabilities" of past indiscretions, including, as discussed, impeachment by former offenses. We find nothing in Proposition 8 indicating an intent to abrogate the effacement provisions of Welfare and Institutions Code section 1772. As noted in *Castro,* the preamble of the initiative—subdivision (a) of section 28—describes as a goal of "highest importance" the ensuring that " 'persons who commit felonious acts causing injury to innocent victims will be appropriately detained in custody, tried by the courts, and sufficiently punished so that the public safety is protected and encouraged,' " but plainly also contemplates that " 'broad reforms in the procedural treatment of accused persons and the disposition and sentencing of convicted persons are necessary and proper as deterrents to criminal behavior. . . .' " (*Castro, supra,* 38 Cal.3d 301, 310.) We believe that the rehabilitation of youthful offenders, as fostered by section 1772, is consistent with the objectives of Proposition 8.

Hence, although recognizing that subdivision (d) of section 28 does not specifically exempt Welfare and Institutions Code section 1772 from the effect of the remainder of Proposition 8, as it does Evidence Code sections 352, 782 and 1103, we nevertheless conclude that use of a prior conviction extinguished by section 1772 is unduly prejudicial and accordingly subject to exclusion in a subsequent criminal proceeding in the exercise of the trial court's discretion. We therefore find that the trial court erred by admitting the prior convictions for impeachment purposes.

Even so, the error does not require reversal. This is not a case in which the evidence is so closely balanced that the error must be deemed prejudicial. (Cf. *People* v. *Briggs* (1962) 58 Cal.2d 385, 407 [24 Cal.Rptr. 417, 374 P.2d 257].) The prosecution presented overwhelming evidence to support the guilty verdict. While appellant's testimony was certainly important to the defense, the case was not, as appellant suggests, a simple credibility contest between himself and the victim. Appellant's testimony that he shot into the air and never intended to hit Johnson was plainly contradicted both by the physical evidence—e.g., the fact that the buckshot hit the exterior

wall of the apartment near Johnson's path of flight—and in the testimony of Johnson's mother. Such evidence was far more damaging to appellant's credibility than the prior conviction. Looking at the record in its entirety, we do not find it reasonably probable that the jury would have embraced appellant's implausible version of the incident and acquitted him of the assault charge had the prior conviction been excluded. Thus, the error did not result in a miscarriage of justice. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Sanchez* (1985) 170 Cal.App.3d 216, 220 [216 Cal.Rptr. 21].)

### III.

■ Appellant's sole remaining contention is that the trial court erred by giving instructions on the lesser included offenses of simple assault and exhibiting a firearm. Appellant does not object to the fact that instructions on lesser included offenses were given; rather, he argues that by also defining such offenses as misdemeanors the trial court improperly prompted the jury to consider penalty. (*People* v. *Mendoza* (1974) 37 Cal.App.3d 717, 727 [112 Cal.Rptr. 565]; *People* v. *Allen* (1973) 29 Cal.App.3d 932, 936-937 [106 Cal.Rptr. 43].) Appellant contends that: "It is probable that [the jury] chose to convict on the felony rather than the misdemeanor because they were aware that it carried a greater sentence."

While the jury is not permitted to consider punishment or penalty in determining guilt or innocence (*People* v. *Moore* (1968) 257 Cal.App.2d 740, 750 [65 Cal.Rptr. 450]), there is no indication from the record that the trial court's instructions on lesser included offenses, as requested by appellant, had such an effect. Simply because the trial court characterized the lesser offenses as misdemeanors does not mean that the jury for that reason convicted appellant of the greater charge. In fact, the trial court specifically admonished the jury: "In your deliberations, the subject of penalty or punishment is not to be discussed or considered by you. That is a matter which must not in any way affect your verdict." We must presume that the jury followed this instruction. (*People* v. *Romo* (1975) 47 Cal.App.3d 976 [121 Cal.Rptr. 684].) We find no such error as is charged.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied February 21, 1986.