[No. S027874. May 13, 1993.]

CITY OF SAN JOSE, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
MICHAEL B., Real Party in Interest.

---

COUNSEL

Joan R. Gallo, City Attorney, George Rios, Assistant City Attorney, and Clifford S. Greenberg, Deputy City Attorney, for Petitioner.

John W. Witt, City Attorney (San Diego), Eugene P. Gordon, Chief Deputy City Attorney, Mayer & Reeves, Martin J. Mayer, Irving Berger, Carroll, Burdick & McDonough, Ronald Yank and John R. Tennant, Jr., as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

Thomas S. Crary for Real Party in Interest.

Linda F. Robertson as Amicus Curiae on behalf of Real Party in Interest.

---

OPINION

**PANELLI, J.**—We granted review in this case to settle questions regarding the scope of discovery of peace officers' personnel records under Evidence

Code section 1045. We must determine whether a juvenile is entitled to discover the outcome of disciplinary proceedings stemming from an earlier citizen's complaint filed against an arresting officer (see Pen. Code, § 832.5; Evid. Code, § 1045, subd. (a)), when that information is relevant to a wardship proceeding (Welf. & Inst. Code, § 602). We conclude that the juvenile is entitled to such discovery.

### FACTS AND PROCEDURAL BACKGROUND

A petition filed under Welfare and Institutions Code section 602 charged minor and real party in interest Michael B. (Minor) with resisting arrest and assault on a San Jose police officer. Minor moved for discovery of police personnel records, claiming any force he used was in response to improper force exerted by arresting officers. The City of San Jose (the City) opposed the motion. The trial court conducted an in camera review of submitted records (Evid. Code, § 1045, subd. (b)) and ordered disclosure of the records of 11 complaints alleging incidents of excessive force and racial prejudice by 2 of the arresting officers. The trial court stated: "In addition, I'm going to allow discovery of the results of the investigations in the complaint numbers that I just mentioned. Not the conclusions of individual officers, but . . . the final result. That is, whether the . . . investigating body [] found that the underlying complaint was founded or unfounded . . . ."

The City petitioned for a writ to compel the trial court to vacate its order to the extent it required disclosure of the results of the police department's investigations. The Court of Appeal for the Sixth Appellate District summarily denied the writ. The Court of Appeal's speaking order (which, of course, lacked binding effect) construed the trial court's order as only requiring disclosure of the discipline imposed as a result of such investigations, and concluded that as such the order complied with Evidence Code section 1045, subdivision (a).

The City petitioned for review. By alternative writ we directed the trial court to vacate its order or show cause before this court why a peremptory writ ordering the relief sought by the City should not issue.

### DISCUSSION

#### *Statutory Background*

In 1978 the California Legislature codified the privileges and procedures surrounding what had come to be known as "*Pitchess* motions" (after our decision in *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr.

897, 522 P.2d 305] (*Pitchess*)) through the enactment of Penal Code sections 832.7 and 832.8[1] and Evidence Code sections 1043 through 1045.[2] (Stats. 1978, ch. 630, p. 2081; see *City of Santa Cruz* v. *Municipal Court* (1989) 49

[1]Penal Code section 832.7, subdivision (a), in pertinent part provides:

"Peace officer personnel records and records maintained pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant to Sections 1043 and 1046 of the Evidence Code. . . ."

Penal Code section 832.8 in pertinent part provides: "As used in Section 832.7, 'personnel records' means any file maintained under that individual's name by his or her employing agency and containing records relating to any of the following: [¶] . . . [¶] (d) Employee advancement, appraisal, or discipline. [¶] (e) Complaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties. [¶] (f) Any other information the disclosure of which would constitute an unwarranted invasion of personal privacy."

[2]Evidence Code section 1043 provides: "(a) In any case in which discovery or disclosure is sought of peace officer personnel records or records maintained pursuant to Section 832.5 of the Penal Code or information from those records, the party seeking the discovery or disclosure shall file a written motion with the appropriate court or administrative body upon written notice to the governmental agency which has custody and control of the records. The written notice shall be given at the times prescribed by subdivision (b) of Section 1005 of the Code of Civil Procedure. Upon receipt of the notice the governmental agency served shall immediately notify the individual whose records are sought.

"(b) The motion shall include all of the following: [¶] (1) Identification of the proceeding in which discovery or disclosure is sought, the party seeking discovery or disclosure, the peace officer whose records are sought, the governmental agency which has custody and control of such records, and the time and place at which the motion for discovery or disclosure shall be heard. [¶] (2) A description of the type of records or information sought. [¶] (3) Affidavits showing good cause for the discovery or disclosure sought, setting forth the materiality thereof to the subject matter involved in the pending litigation and stating upon reasonable belief that the governmental agency identified has the records or information from the records.

"(c) No hearing upon a motion for discovery or disclosure shall be held without full compliance with the notice provisions of this section except upon a showing by the moving party of good cause for noncompliance, or upon a waiver of the hearing by the governmental agency identified as having the records."

Evidence Code section 1044 provides: "Nothing in this article shall be construed to affect the right of access to records of medical or psychological history where such access would otherwise be available under Section 996 or 1016."

Evidence Code section 1045 provides: "(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation.

"(b) In determining relevance the court shall examine the information in chambers in conformity with Section 915, and shall exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction which is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a

Cal.3d 74, 81 [260 Cal.Rptr. 520, 776 P.2d 222].) In *Pitchess* we held that a criminal defendant's fundamental right to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information entitled a defendant, who was asserting self-defense to a charge of battery on a police officer, to discovery of police personnel records. (11 Cal.3d at pp. 535-537.) The pertinent provisions of the legislation (hereafter sometimes referred to as Senate Bill No. 1436) may be summarized briefly as follows.

Senate Bill No. 1436 defines "personnel records" (Pen. Code, § 832.8) and provides that such records are "confidential" and subject to discovery only pursuant to the procedures set forth in the Evidence Code. (Pen. Code, § 832.7.)

Evidence Code sections 1043 and 1045, also enacted as part of Senate Bill No. 1436, set forth the procedures for discovery. A party seeking disclosure must file a written motion, with notice to the governmental agency having custody of the records sought. The motion must describe the type of records or information sought and provide affidavits showing good cause for the disclosure, setting forth its materiality to the pending litigation and stating on reasonable belief that the identified agency possesses the records or information. (Evid. Code, § 1043.) The trial court must then make an in camera examination of the information produced by the agency and exclude from disclosure certain categories of information, including complaints more than five years old, the conclusions of any officer investigating a complaint, and facts that are so remote as to make disclosure of little or no practical benefit. (Evid. Code, § 1045, subd. (b).)

The court may make any order that justice requires to protect the officer or agency from unnecessary annoyance, embarrassment, or oppression, and must order that any records disclosed shall not be used for any purpose other

complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.

"(c) In determining relevance where the issue in litigation concerns the policies or pattern of conduct of the employing agency, the court shall consider whether the information sought may be obtained from other records maintained by the employing agency in the regular course of agency business which would not necessitate the disclosure of individual personnel records.

"(d) Upon motion seasonably made by the governmental agency which has custody or control of the records to be examined or by the officer whose records are sought, and upon good cause showing the necessity thereof, the court may make any order which justice requires to protect the officer or agency from unnecessary annoyance, embarrassment or oppression.

"(e) The court shall, in any case or proceeding permitting the disclosure or discovery of any peace officer records requested pursuant to Section 1043, order that the records disclosed or discovered may not be used for any purpose other than a court proceeding pursuant to applicable law."

than a court proceeding pursuant to applicable law. (Evid. Code, § 1045, subds. (d), (e); see *City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at pp. 81-82.) The statutory scheme carefully balances two directly conflicting interests: the peace officer's just claim to confidentiality, and the criminal defendant's equally compelling interest in all information pertinent to the defense. (49 Cal.3d at p. 84.)

We have earlier had occasion to address whether "good cause" for discovery of police personnel records, pursuant to Evidence Code section 1043, subdivision (b), requires an affidavit based on the declarant's personal knowledge of the included averments. (*City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d 74.) We have also visited the issue of "materiality" for discovery of police records. (*People* v. *Memro* (1985) 38 Cal.3d 658 [214 Cal.Rptr. 832, 700 P.2d 446].) Here we confront different questions: whether Evidence Code section 1045, subdivision (b)(2), applies in juvenile proceedings, and whether section 1045 allows disclosure of the discipline imposed as a result of police department internal investigations of citizen complaints on a threshold showing of relevancy.

*Evidence Code Section 1045, subdivision (b)(2)*
*Applies in Juvenile Proceedings*

■ Minor questions the application of Evidence Code section 1045, subdivision (b)(2) in *juvenile* proceedings. He notes that when section 1045, subdivision (b)(2) was enacted, Welfare and Institutions Code section 203 provided (and continues to provide) that "[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding." (Welf. & Inst. Code, § 203.) Based on this language, he urges that the Legislature must have been aware of the difference between criminal and juvenile proceedings and must have intended that section 1045, subdivision (b)(2) not apply to the latter.

Although it is true that procedural safeguards guaranteed to adult criminal defendants have not been applied ipso facto in delinquency matters (*Robert S.* v. *Superior Court* (1992) 9 Cal.App.4th 1417, 1423 [12 Cal.Rptr.2d 489]), we cannot agree that this is an instance in which differing rules should govern. As we observed in *Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801 [91 Cal.Rptr. 594, 478 P.2d 26] (*Joe Z.*), "the ' "civil" label-of-convenience' (*In re Gault,* 387 U.S. 1, 50 [18 L.Ed.2d 527, 558, 87 S.Ct. 1428]) cannot obscure the quasi-criminal nature of juvenile proceedings, involving as they often do the possibility of a substantial loss of personal freedom." In *Joe Z.* we determined that trial courts should have the same degree of discretion

over discovery in juvenile proceedings as in adult criminal matters. (*Joe Z.,* *supra,* 3 Cal.3d at p. 801.) Since that decision, discovery practice in delinquency proceedings generally has been derived from, and parallels, that in adult criminal cases. (*Robert S.* v. *Superior Court, supra,* 9 Cal.App.4th at p. 1422.)

Although Evidence Code section 1045, subdivision (b)(2) does not expressly refer to juvenile proceedings, we believe the same considerations that operate to protect the confidentiality of peace officer personnel records from disclosure in the adult context similarly govern their disclosure in delinquency cases. The Legislature's aim in enacting Senate Bill No. 1436 manifestly was to protect such records against "fishing expeditions" conducted by defense attorneys following the *Pitchess* decision (*supra,* 11 Cal.3d 531). Peace officers' privacy interests do not vary with the age of the accused who seeks personnel records. Indeed, discovery has been granted pursuant to Evidence Code section 1043 in other reported juvenile cases. (See, e.g., *Larry E.* v. *Superior Court* (1987) 194 Cal.App.3d 25 [239 Cal.Rptr. 264]; *Pierre C.* v. *Superior Court* (1984) 159 Cal.App.3d 1120, 1122-1123 [206 Cal.Rptr. 82] [ordering issuance of writ of mandate to compel in camera hearing to determine discoverability of certain police personnel files in proceeding under Welf. & Inst. Code, § 602]; see also *Kelvin L.* v. *Superior Court* (1976) 62 Cal.App.3d 823 [133 Cal.Rptr. 325] [*Pitchess* discovery before enactment of Evid. Code, § 1043].) Accordingly, we conclude that section 1045, subdivision (b)(2) applies in juvenile proceedings as well as in adult criminal matters.

*Discovery of "Discipline Imposed" Under Evidence Code Section 1045*

 We next consider whether the relevant statutes require disclosure of discipline imposed as a result of internal police investigations. Our role in construing or interpreting a statute is, as we have frequently noted, to ascertain and effectuate legislative intent. (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216], quoting *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We will consider legislative history as an extrinsic aid to help elucidate legislative intent. (*San Francisco Police Officers' Assn.* v. *Superior Court* (1988) 202 Cal.App.3d 183, 189 [248 Cal.Rptr. 297]; see *City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at pp. 88-89 [employing legislative archive materials to ascertain Legislature's intent in enacting Sen. Bill No. 1436].)

 The parties focus on Evidence Code section 1045. Subdivision (a) of that statute provides that "[*n*]*othing in this article shall be construed to affect the right of access to* records of complaints, or investigations of

complaints, or *discipline imposed* as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation." (Evid. Code, § 1045, subd. (a), italics added.)

On its face, the highlighted language clearly supports the order for disclosure of discipline imposed on the arresting officers. The City, however, contends that another portion of Evidence Code section 1045 compels a different result. It notes that subdivision (b) provides in pertinent part that "[i]n determining relevance the court shall examine the information in chambers in conformity with Section 915, *and shall exclude from disclosure*: [¶] . . . [¶] (2) *In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code.*" (Evid. Code, § 1045, subd. (b), italics added.) In essence, the City urges that "discipline imposed" is the equivalent of the "conclusions" of an officer investigating a citizen's complaint. Subdivision (b)(2) of Evidence Code section 1045, the City argues, is a specific provision applicable in criminal cases, taking precedence over the more general provision contained in subdivision (a).

We find the City's interpretation of the statute unpersuasive. In using two quite different terms—"discipline imposed" and "conclusions of any officer investigating a complaint"—the Legislature presumably intended to refer to two distinct concepts. If the City's interpretation were correct, the exception provided by subdivision (b)(2) would swallow the rule permitting disclosure as established in subdivision (a), thus rendering that part of subdivision (a) virtually meaningless. ██ We ordinarily reject interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance. (*City and County of San Francisco v. Farrell* (1982) 32 Cal.3d 47, 54 [184 Cal.Rptr. 713, 648 P.2d 935].)

██ The term "conclusions of any officer" denotes the thought processes of, and factual inferences and deductions drawn by, an officer investigating a complaint, concerning such matters as the credibility of witnesses or the significance, strength, or lack of evidence. We see no indication that the Legislature intended the term to include the investigating body's ruling on the complaint or the nature of any discipline imposed. As Minor correctly asserts, the statutory scheme reveals a legislative intent to allow disclosure of the outcome of an investigation, i.e., the discipline imposed, without also requiring disclosure of how or why the investigating body reached that outcome.

Minor's argument finds support in the legislative history of Senate Bill No. 1436. The phrase "conclusions of any officer investigating a complaint"

did not appear in the bill until its amendment in the Assembly Committee on Criminal Justice. (Assem. Amend. to Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 30, 1978.) The committee staff report accompanying the Assembly amendments explained the purpose of the added language as follows: "The DRAFT excludes discovery in criminal cases of the conclusions of an officer who investigated a citizen's complaint while generally permitting discovery of the personnel records themselves. This approach was taken to protect the officer whose files are sought from discovery of what are unsubstantiated comments of another officer but permitting the petitioner to review all of the files which the court has deemed to be relevant to the litigation." (Assem. Com. on Crim. Justice, Analysis of Sen. Bill No. 1436 (1977-1978 Reg. Sess.) Aug. 28, 1978, p. 4.) The reference to "unsubstantiated comments of another officer" thus demonstrates a concern to prevent the disclosure not of the final outcome of a disciplinary process, but of preliminary determinations untested by the full panoply of investigative procedures.

That the Legislature did distinguish between disciplinary results and interim conclusions by an investigating officer is confirmed by examination of a related statute contained in Senate Bill No. 1436 but not directly implicated in this case. As amended, Penal Code section 832.7 speaks in relevant part of dissemination of "data regarding the number, type, or *disposition of complaints (sustained, not sustained, exonerated, or unfounded)* . . . ." (Pen. Code, § 832.7, subd. (b), italics added [added by Stats. 1989, ch. 615, § 1].) Notably, in so amending Penal Code section 832.7, the Legislature did not choose to employ the term "conclusion of any officer investigating a complaint"; rather, it selected the more specific language just quoted, unmistakably conveying its intent with respect to dissemination of disciplinary results. One can reasonably infer that if Evidence Code section 1045, subdivision (b)(2) had been meant to exempt from disclosure information about the disposition of complaints, the Legislature would have said so in similarly precise terms.

The City cites language appearing in several cases to support its contention that discovery of the results of disciplinary investigations violates Evidence Code section 1045, subdivision (b)(2). The City points to the following comment in *Arcelona* v. *Municipal Court* (1980) 113 Cal.App.3d 523, 531 [169 Cal.Rptr. 877]: "While subdivision (a) of Evidence Code section 1045 implicitly recognizes the continuing vitality of judicially developed rules of criminal discovery [citation], subdivision (b)(2) represents a statutory modification of case law principles in excluding any *conclusions* resulting from internal investigations of citizens' complaints as being irrelevant." The cited language does not assist the City, however, since it pertains to verbatim reports of internal investigations, not to discipline imposed. (*Id.* at p. 530.)

Dicta in *People* v. *Memro, supra,* 38 Cal.3d at page 687, state that "the conclusions resulting from internal investigations of citizens' complaints are excluded from disclosure." (*Ibid.*; see also *City of Santa Cruz* v. *Municipal Court, supra,* 49 Cal.3d at p. 84 ["[T]he courts have generally refused to disclose verbatim reports or records of any kind from peace officer personnel files, ordering instead . . . that the agency reveal only the name, address, and phone number of any prior complainants and witnesses and the dates of the incidents in question."].) However, the quoted language in *Memro,* like that in *Arcelona, supra,* 113 Cal.App.3d at page 531, deals with reports of internal investigations.

The City cites *Carruthers* v. *Municipal Court* (1980) 110 Cal.App.3d 439, 441-442 [168 Cal.Rptr. 33], as further authority for its position, but we note that in *Carruthers,* the prosecution conceded that the defendants, charged with battery on police officers, were "entitled under *Brady* v. *Maryland* (1963) 373 U.S. 83 [10 L.Ed.2d 215, 83 S.Ct. 1194], to disclosure of the *fact* that discipline was imposed on an officer pursuant to a complaint of excessive force." (*Carruthers* v. *Municipal Court, supra,* 110 Cal.App.3d at p. 443, italics in original.) Although the concession is nonbinding here, we concur in its implicit rationale. In sum, the cases the City relies on neither compel nor support the result it seeks.

Amicus curiae San Jose Police Officers' Association asserts that requiring disclosure of the discipline imposed against officers will tend to undermine the effectiveness of police departments' internal affairs divisions in their investigatory and disciplinary functions and may discourage citizens from making complaints. Likewise, several other law enforcement organizations, as amici curiae,[3] contend that collateral use of a disciplinary decision in a criminal case would deter public agencies from single-mindedly enforcing appropriate standards of behavior for peace officers. We doubt that such untoward results will ensue. Because only the outcome of the investigation, rather than verbatim reports or records of investigations, is subject to disclosure, there should be no inhibition of officers' candor in responding to interrogation by a department's internal affairs division. Moreover, as Minor points out, a department already possesses the statutory authority to disclose investigatory results to the complainant, who is under no obligation to keep them confidential. (See Pen. Code, § 832.7, subd. (c).) Furthermore, since complainants' identities are already subject to disclosure to defendants seeking discovery on a sufficient showing of materiality, we fail to see how disclosure of the discipline ultimately imposed on an officer could deter citizens from bringing complaints.

---

[3]The California Police Chiefs Association, the California Peace Officers' Association, and the California State Sheriffs' Association.

## DISPOSITION

The alternative writ of mandate is discharged and the petition for a peremptory writ of mandate is denied.

Lucas, C. J., Mosk, J., Kennard, J., Arabian, J., Baxter, J., and George, J., concurred.