[No. S124205. Aug. 10, 2006.]

In re DERRICK B., A Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
DERRICK B., Defendant and Appellant.

[Redacted]

## COUNSEL

E. Katherine Dashiell, under appointment by the Supreme Court, and Dale J. Blea, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Stan Cross and Janet E. Neeley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—Here we conclude that a juvenile offender may not be ordered to register as a sex offender under Penal Code section 290 if his offenses are not among those listed in subdivision (d)(3).[1]

### I. FACTUAL AND PROCEDURAL BACKGROUND

At the age of 17 Derrick B. was committed to the California Youth Authority. The commitment followed four years of juvenile court intervention

---

[1] All further undesignated statutory references are to the Penal Code.

beginning when Derrick was accused of lewd and lascivious acts with a child under 14. (§ 288, subd. (a).) Derrick was then 13 years old and living with the family of a 10-year-old girl. While she slept, he reached under her clothes and touched her chest, buttocks, and vagina. Pursuant to an agreement, Derrick was declared a ward of the court for having committed the lesser offense of sexual battery (§ 243.4). He was ordered to live in a group home and attend sex offender treatment, as conditions of probation.

Derrick failed in several group home placements. During the course of his wardship he admitted to counselors that he had sexually assaulted a number of victims. He also reported his own sexual victimization at the hands of his parents' friends.

In 2002, Derrick was found to have committed a misdemeanor weapons offense, continued as a ward, and again ordered to undergo sex offender treatment. In 2003, Derrick admitted misdemeanor violations for assault and battery. The court sent Derrick to the California Youth Authority, choosing his earlier sexual battery offense as the basis for the principal term. (Welf. & Inst. Code, § 602, subd. (a).) The court also directed that he register as a sex offender upon his release. The Court of Appeal affirmed the judgment, with a modification of precommitment credit.

The only issue before us is the validity of the section 290 registration order.

## II. Discussion

Three provisions of section 290 must be analyzed to resolve this question.

■ Section 290, subdivision (a)(2)(A) requires registration by adults convicted of various sex offenses, including sexual battery (§ 243.4).[2]

---

[2] Section 290, subdivision (a)(2)(A) provides: "Any person who, since July 1, 1944, has been or is hereafter convicted in any court in this state or in any federal or military court of a violation of Section 207 or 209 committed with intent to violate Section 261, 286, 288, 288a, or 289, Section 220, except assault to commit mayhem, *Section 243.4*, paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, or paragraph (1) of subdivision (a) of Section 262 involving the use of force or violence for which the person is sentenced to the state prison, Section 264.1, 266, or 266c, subdivision (b) of Section 266h, subdivision (b) of Section 266i, Section 266j, 267, 269, 285, 286, 288, 288a, 288.5, or 289, Section 311.1, subdivision (b), (c), or (d) of Section 311.2, Section 311.3, 311.4, 311.10, 311.11, or 647.6, former Section 647a, subdivision (c) of Section 653f, subdivision 1 or 2 of Section 314, any offense involving lewd or lascivious conduct under Section 272, or any felony violation of Section 288.2; or any statutory predecessor that includes all elements of one of the above-mentioned offenses; or any person who since that date has been or is hereafter convicted of the attempt to commit any of the above-mentioned offenses." (Italics added.)

Section 290, subdivision (d)(3) pertains to juveniles sent to the youth authority. It lists specific offenses giving rise to a registration requirement upon discharge or parole.[3] Sexual battery is not included in this list.

A third subdivision authorizes a court to require registration in connection with unlisted offenses if the court makes certain findings and states reasons for the imposition. (§ 290, subd. (a)(2)(E).)[4] The Attorney General relies on this subdivision to defend the juvenile court's order. The reliance is misplaced.

■ The well-settled objective of statutory construction is to ascertain and effectuate legislative intent. (*People v. Trevino* (2001) 26 Cal.4th 237, 240 [109 Cal.Rptr.2d 567, 27 P.3d 283]; *People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) To determine that intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. (*Trevino*, at p. 241; *Trope v. Katz* (1995) 11 Cal.4th 274, 280 [45 Cal.Rptr.2d 241, 902 P.2d 259].) When the statutory language is clear, we need go no further. If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, the legislative history, the statutory scheme of which the statute is a part, and contemporaneous administrative construction, as well as questions of public policy. (*People v. Flores* (2003) 30 Cal.4th 1059, 1063 [135 Cal.Rptr.2d 63, 69 P.3d 979]; *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650,

---

[3] Section 290, subdivision (d)(1) provides: "Any person who, on or after January 1, 1986, is discharged or paroled from the Department of the Youth Authority to the custody of which he or she was committed after having been adjudicated a ward of the juvenile court pursuant to Section 602 of the Welfare and Institutions Code because of the commission or attempted commission of any offense described in paragraph (3) shall be subject to registration under the procedures of this section."

The offenses listed in section 290, subdivision (d)(3) are: "(A) Assault with intent to commit rape, sodomy, oral copulation, or any violation of Section 264.1, 288, or 289 under Section 220. [¶] (B) Any offense defined in paragraph (1), (2), (3), (4), or (6) of subdivision (a) of Section 261, Section 264.1, 266c, or 267, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 286, Section 288 or 288.5, paragraph (1) of subdivision (b) of, or subdivision (c) or (d) of, Section 288a, subdivision (a) of Section 289, or Section 647.6. [¶] (C) A violation of Section 207 or 209 committed with the intent to violate Section 261, 286, 288, 288a, or 289."

[4] Section 290, subdivision (a)(2) sets out the categories of persons required to register as sex offenders. Subdivision (a)(2)(E) provides for the registration of "[a]ny person ordered by any court to register pursuant to this section for any offense not included specifically in this section if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification. The court shall state on the record the reasons for its findings and the reasons for requiring registration."

889 P.2d 970]; *People v. Woodhead* (1987) 43 Cal.3d 1002, 1007–1008 [239 Cal.Rptr. 656, 741 P.2d 154].)

■ Under section 290, subdivision (a)(2)(E), a court may order registration for unlisted offenses if it "finds *at the time of conviction or sentencing* that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (Italics added.) This language is clear. "Conviction" and "sentencing" are terms of art usually associated with adult proceedings. Because the Legislature used these terms, we construe this subdivision as applying only in cases of adult convictions.[5]

In *People v. Burton* (1989) 48 Cal.3d 843 [258 Cal.Rptr. 184, 771 P.2d 1270] (*Burton*), we held that a capital defendant's prior juvenile adjudications, though serious offenses, were not prior felony convictions within the terms of section 190.3, factor (c).[6] As we explained: "Welfare and Institutions Code section 203 provides that '[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime *for any purpose,* nor shall a proceeding in the juvenile court be deemed a criminal proceeding.' This court and the Courts of Appeal have consistently agreed that adjudications under Welfare and Institutions Code section 602 are not criminal convictions. (E.g., *People* v. *Weidert* (1985) 39 Cal.3d 836, 844–847 [218 Cal.Rptr. 57, 705 P.2d 380]; *In re Joseph B.* (1983) 34 Cal.3d 952, 955 [196 Cal.Rptr. 348, 671 P.2d 852]; *Leroy T.* v. *Workmen's Comp. Appeals Bd.* (1974) 12 Cal.3d 434, 439 [115 Cal.Rptr. 761, 525 P.2d 665]; *People* v. *Sanchez* (1985) 170 Cal.App.3d 216, 218–219 [216 Cal.Rptr. 21]; see also *People* v. *Lucky* (1988) 45 Cal.3d 259, 294–295 [247 Cal.Rptr. 1, 753 P.2d 1052].)" (*Burton,* at p. 861, italics added.)

"We must assume that the voters, when they enacted section 190.3, were aware of Welfare and Institutions Code section 203 and judicial constructions of its terms. (*People* v. *Weidert, supra,* 39 Cal.3d 836, 844.) With such an awareness, the voters cannot have intended the term 'prior felony conviction' contained in section 190.3, factor (c) to refer to juvenile court adjudications. We employ a presumption that when the language of a statute uses a term that has been judicially construed, the term is used in the precise sense which the court gave it. (*Weidert, supra,* at pp. 845–846.) Consistent with past decisions and in the absence of any evidence the voters intended a different interpretation for section 190.3, factor (c), we conclude evidence of juvenile

---

[5] A juvenile tried as an adult would, of course, be treated as an adult for purposes of the registration requirement.

[6] "The presence or absence of any prior felony conviction" is one of the aggravating and mitigating circumstances the trier of fact in a capital case is to consider in choosing between the death penalty and life imprisonment without possibility of parole. (§ 190.3, factor (c).)

adjudications is not admissible under factor (c). (See *People* v. *Lucky*, *supra*, 45 Cal.3d at pp. 294–295.)" (*Burton*, *supra*, 48 Cal.3d at pp. 861–862.)[7]

The same reasoning bolsters the conclusion that the Legislature, in choosing the terms "conviction" and "sentencing" in its 1994 enactment of section 290, subdivision (a)(2)(E),[8] was aware of Welfare and Institutions Code section 203 and judicial constructions of its terms, including *Burton*, *supra*, 48 Cal.3d 843, and the cases it cites.

*In re Bernardino S.* (1992) 4 Cal.App.4th 613 [5 Cal.Rptr.2d 746] (*Bernardino S.*) provides additional support for this construction. Bernardino S. was accused of performing a lewd and lascivious act on a child under the age of 14. He admitted the allegations, was adjudged a ward, and was required to register as a sex offender under section 290. (4 Cal.App.4th at pp. 616–617.) The Court of Appeal reversed, holding that before the enactment of subdivision (d), section 290 was inapplicable to juvenile offenders.

"Prior to 1986, Penal Code section 290 required registration only by persons who had been 'convicted' of specified sex offenses. Under the juvenile court law, a person adjudged a ward of the court has not been 'convicted' of anything. Welfare and Institutions Code section 203 provides that a wardship adjudication 'shall not be deemed a conviction of a crime for any purpose, nor shall a proceeding in the juvenile court be deemed a criminal proceeding.' [¶] . . . [¶]

"The Legislature's own interpretation of the statute as applied to juvenile wards became apparent when, in 1985, it amended Penal Code section 290 by adopting a new subdivision (d) expressly dealing with wards of the juvenile

---

[7] We went on to reject the defendant's contention that section 190.3, factor (b), making evidence of *criminal activity* involving force or violence admissible as a factor in aggravation, excludes criminal activity of juveniles. "As we stated in *People* v. *Lucky*, *supra*, 45 Cal.3d at page 295: '[T]he legislative history of the identical [factor] (b) of the *1977* law makes clear that, with respect to past *violent* acts, admissible "criminal activity" includes evidence of misconduct, regardless of "conviction," which amounts to an "actual crime, *specifically, the violation of a penal statute*," so long as defendant was not "acquitted." [Citations.] The Juvenile Court Law expressly provides that a minor is eligible for wardship status "when he violates any law . . . or . . . ordinance . . . defining crime. . . ." (Welf. & Inst. Code, § 602.) Contrary to defendant's assertion, nothing in the 1977 or 1978 laws indicates an intent to exclude violent criminal misconduct while a juvenile as an aggravating factor, simply on grounds the misconduct resulted in a juvenile wardship adjudication.' (Italics in original.) The use of prior violent juvenile misconduct as factor (b) criminal activity, we observed, does not violate the proscription that a juvenile adjudication 'shall not be deemed a conviction of a crime for any purpose' (Welf. & Inst. Code, § 203): 'It is not the adjudication, but the conduct itself, which is relevant.' (*People* v. *Lucky*, *supra*, at pp. 295–296, fn. 24.)" (*Burton*, *supra*, 48 Cal.3d at p. 862.)

[8] (Stats. 1994, ch. 865, § 1, p. 4316.)

court. Extrinsic legislative materials strongly indicate that the preamendment statute had no application whatever to juvenile wards: 'Although persons, including remanded minors, committed to Youth Authority from *criminal* court for specified sex offenses must register under current law, juvenile court commitments do not currently have to register no matter how violent their offense.' (Assem. Office of Research, 3d reading analysis of Sen. Bill No. 888 (1985–1986 Reg. Sess.) as amended Sept. 12, 1985, p. 2 [3d reading analysis].) The Legislature viewed the amendment as an expansion of the statute's sweep to persons previously excluded. (Legis. Counsel's Dig., Sen. Bill No. 888, 4 Stats. 1985 (Reg. Sess.), Summary Digest, p. 553 ['expanding the category of persons to which a criminal penalty is applicable']; 3d reading analysis, *supra*, p. 1 ['expands application of the registration requirements'].)

"Given this legislative interpretation of the pre-1986 statute and the complete absence of contrary authority, it seems clear that the sole statutory basis for requiring juvenile wards to register as sex offenders is the 1985 amendments themselves. We turn now to the question whether those amendments can be properly understood as bringing appellant within the statute." (*Bernardino S.*, *supra*, 4 Cal.App.4th at pp. 618–619, fns. omitted.)

The court held that Bernardino S. could not be required to register under section 290, subdivision (d) because he had not been committed to the youth authority. (*Bernardino S.*, *supra*, 4 Cal.App.4th at pp. 619–620.)

The Attorney General contends that *Bernardino S., supra*, 4 Cal.App.4th 613, is inapposite because it was decided before the enactment of section 290, subdivision (a)(2)(E). This argument fails. The fact that *Bernardino S.* was decided before the enactment of subdivision (a)(2)(E) makes it all the more significant that the Legislature chose to use terms that had been construed to apply to adult offenders only.

The Attorney General also relies on *In re Jovan B.* (1993) 6 Cal.4th 801 [25 Cal.Rptr.2d 428, 863 P.2d 673] (*Jovan B.*). There we considered the reach of section 12022.1, which increases the penalty for a felony committed while the defendant is free on bail or his own recognizance (O.R.). We granted review to decide whether the enhancement applies in juvenile court proceedings and concluded that it does. (*Jovan B.*, at p. 807.)

We explained our reversal of the Court of Appeal. "The Court of Appeal concluded that by its plain terms, the bail/O.R. enhancement statute cannot apply toward a juvenile ward's maximum confinement or commitment because the statute speaks in terms of 'information[s],' 'indictment[s],' 'complaint[s],' 'preliminary hearing[s],' and 'sentencing,' all of which are foreign

to juvenile procedure. In particular, the Court of Appeal noted, the enhancement requires 'conviction' of both the 'bailed' and 'while-on-bail' offenses. (See Pen. Code, § 12022.1, subds. (d)–(g).) The court reasoned that because '[a]n order adjudging a minor to be a ward of the juvenile court shall not be deemed a conviction of a crime for any purpose . . .' (Welf. & Inst. Code, § 203), a juvenile offender cannot meet the criteria for application of the enhancement." (*Jovan B.*, *supra*, 6 Cal.4th at p. 811.)

We found the Court of Appeal's analysis flawed, not because of the way it parsed the language of section 12022.1, but because it interpreted the statute in isolation. "The approach taken . . . overlooks the plain language of another statute, Welfare and Institutions Code section 726, which provides that a juvenile ward's maximum confinement or commitment shall be a time *equal to* 'the maximum term of *imprisonment* which could be imposed upon an *adult convicted* of the [same] offense or offenses . . . .' (Italics added.) Hence, for this limited juvenile purpose, the minor's current and prior juvenile records are to be treated *as if* they were compiled in an adult context. [¶] The [Determinate Sentencing Act] provides in detail for the enhancement of adult sentences when specified circumstances of an offense, or of the offender's record, suggest that a longer period of confinement is warranted. Welfare and Institutions Code section 726 expressly adopts this system of enhancements for purposes of computing a juvenile ward's maximum confinement or commitment." (*Jovan B.*, *supra*, 6 Cal.4th at p. 811.)

*Jovan B.*, *supra*, 6 Cal.4th 801, is clearly distinguishable. Here there is no broader context to expand upon the clear language chosen by the Legislature.

The Attorney General's reliance upon *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47 [19 Cal.Rptr.2d 73, 850 P.2d 621] (*San Jose*) is likewise misplaced. In *San Jose*, we considered the application of Evidence Code section 1045, subdivision (b)(2) in juvenile proceedings. That subdivision states that upon a motion for discovery of police records in any "criminal proceeding" the court must deny disclosure of an officer's conclusions following investigation of a citizen's complaint. The minor argued that because Welfare and Institutions Code section 203 provides that a proceeding in a juvenile court shall not be deemed a criminal proceeding, the Legislature must have intended that section 1045, subdivision (b)(2) not apply to juvenile court proceedings. (5 Cal.4th at p. 53.)

We rejected the argument, noting that in *Joe Z. v. Superior Court* (1970) 3 Cal.3d 797, 801 [91 Cal.Rptr. 594, 478 P.2d 26], "we determined that trial courts should have the same degree of discretion over discovery in

juvenile proceedings as in adult criminal matters. (*Joe Z., supra,* 3 Cal.3d at p. 801.) Since that decision, discovery practice in delinquency proceedings generally has been derived from, and parallels, that in adult criminal cases. (*Robert S. v. Superior Court* [(1992)] 9 Cal.App.4th [1417,] 1422 [12 Cal.Rptr.2d 489].)" (*San Jose, supra,* 5 Cal.4th at pp. 53–54.)

"Although Evidence Code section 1045, subdivision (b)(2) does not expressly refer to juvenile proceedings, we believe the same considerations that operate to protect the confidentiality of peace officer personnel records from disclosure in the adult context similarly govern their disclosure in delinquency cases. The Legislature's aim in enacting Senate Bill No. 1436 manifestly was to protect such records against 'fishing expeditions' conducted by defense attorneys following the *Pitchess* decision [*Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305]]. Peace officers' privacy interests do not vary with the age of the accused who seeks personnel records. Indeed, discovery has been granted pursuant to Evidence Code section 1043 in other reported juvenile cases. [Citations.] Accordingly, we conclude that section 1045, subdivision (b)(2) applies in juvenile proceedings as well as in adult criminal matters." (*San Jose, supra,* 5 Cal.4th at p. 54.)

*San Jose* is manifestly inapposite. Our decision there was informed by the fact that discovery practice in delinquency proceedings over the previous 23 years had generally been derived from, and paralleled, that in adult criminal cases. (*San Jose, supra,* 5 Cal.4th at p. 54.) By contrast, when the Legislature enacted section 290, subdivision (a)(2)(E), its previous practice, embodied in subdivisions (a)(2)(A) and (d), was to differentiate between adults and juveniles.

Here, the Court of Appeal concluded that interpreting the phrase "conviction and sentencing" to exclude juvenile court proceedings would render meaningless the phrases "any court" and "any person" also found in section 290, subdivision (a)(2)(E). However, the meaning of the phrase "any person" depends on its context. For example, in subdivision (c)(1) "any person" refers to adult offenders.[9] On the other hand, in subdivision (d), "any person" refers to juvenile offenders released from the youth authority, or an equivalent institution in another state, who had committed a listed offense. (See *ante,*

---

[9] Section 290, subdivision (c)(1) provides in pertinent part: "Any person who is convicted in this state of the commission or attempted commission of any of the offenses specified in subdivision (a) and who is released on probation, shall, prior to release or discharge, be informed of the duty to register under this section by the probation department, and a probation officer shall require the person to read and sign any form that may be required by the Department of Justice, stating that the duty of the person to register under this section has been explained to him or her." Subdivision (a)(2)(A) lists the offenses requiring registration by adult offenders.

p. 539, fn. 3.) In subdivision (a)(2)(E), the question whether "any person" refers to adults or juveniles is resolved by the subdivision's reference to the person as having been subject to "conviction or sentencing." Adults are subject to conviction and sentencing; juveniles are not, unless they are remanded for trial as adults (Welf. & Inst. Code, §§ 707, 707.1).

The Court of Appeal, finding the phrasing of subdivision (a)(2)(E) of section 290 ambiguous, resorted to legislative history to determine its meaning. In concluding that subdivision (a)(2)(E) does apply to juveniles, the Court of Appeal found it significant that the stated purpose of the statute's 1994 amendments was " 'to increase the penalties under the sex offender registration statute, and to broaden its scope and application.' (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Assem. Bill No. 3513 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, p. 3.)" This analysis begs the question whether the purpose of subdivision (a)(2)(E) was to broaden the application of section 290 for both adult and juvenile offenders, or only for adults.

As originally introduced, the 1994 amendments gave a court much broader discretion under section 290, subdivision (a)(2)(E). (See Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3513 (1993–1994 Reg. Sess.) as amended June 2, 1994, p. 4.) Thereafter, the proposed legislation was amended to "[c]larify that a court may order any person to register as a sex offender for any offense not referenced in the sex offender statute if the court finds at the time of conviction that the person committed the offense as a result of sexual compulsion or for the purpose of sexual gratification" and to "[r]equire a court who implements the above provision to . . . state on the record the reasons for its findings and the reasons for requiring registration." (Assem. Conc. Sen. Amends., Assem. Bill No. 3513 (1993–1994 Reg. Sess.) as amended Aug. 26, 1994, p. 2.) This more restrictive version of the legislation was enacted. (Stats. 1994, ch. 865, § 1, p. 4316.)

The Court of Appeal concluded, "There is no indication . . . that the narrowing of the bill's broad language prior to its enactment was intended to limit its reach to adults. Rather, this narrowing was an attempt to provide courts with guidance concerning the proper exercise of discretion."

This reasoning overlooks the Legislature's specific choice of the terms "conviction" and "sentencing" in providing its guidance.

Moreover, as the Court of Appeal observed, one of the stated purposes of the 1994 amendments was to broaden the scope of section 290.[10] Enacting subdivision (a)(2)(E) was one aspect of that expansion. The Legislature also chose to broaden section 290 by adding to the list of offenses in subdivision (a)(2)(A) for which an adult is required to register.[11] Sexual battery was one of the offenses added. (Stats. 1994, ch. 865, § 1, p. 4316.) By contrast, neither in 1994 nor subsequently has the Legislature added sexual battery to the offenses listed in subdivision (d)(3) pertaining to juveniles.

This disparate drafting gives rise to divergent application.

The Attorney General argues that "[n]umerous subdivisions of section 290 apply to juveniles without using juvenile terminology. If this were not so, the registration system would not be operative for juveniles. For example, subdivision (a)(1)(A) requires 'every person described in paragraph (2)' to register with the police or sheriff within five working days when coming into a jurisdiction to reside. Juvenile registrants must comply with this provision, even though their offenses are not 'described in paragraph (2)' of subdivision (a), which is the list of adult registrable offenses.[12] If this provision did not apply to juveniles, there would be no provision in section 290 telling juveniles when and where to register."

The Attorney General is doubtless correct that certain other provisions of section 290 may be best understood as referring to juveniles, even though the reference is not explicit. However, the fact remains that the Legislature carefully distinguished, in subdivisions (a)(2)(A) and (d)(3), between the offenses requiring registration by adults and those requiring registration by juveniles. In the absence of a clear expression of its intent, we are not persuaded that the Legislature meant to altogether abandon such differentiation in enacting subdivision (a)(2)(E).

In listing sexual battery among the registrable offenses for adults, but not for juveniles, the Legislature may have acted intentionally or through inadvertence. If the latter, the Legislature may correct its oversight, but it is not our role to do so.

---

[10] Senate Rules Committee, Office of Senate Floor Analyses, Analysis of Assembly Bill No. 3513 (1993–1994 Reg. Sess) as amended August 26, 1994, page 3.

[11] Senate Committee on the Judiciary, Analysis of Assembly Bill No. 3513 (1993–1994 Reg. Sess.) as amended June 2, 1994, page 3.

[12] As noted above, the list of registrable offenses for juveniles is set out in section 290, subdivision (d)(3). (*Ante*, p. 539, fn. 3.)

### III. Disposition

The judgment of the Court of Appeal is reversed insofar as it upholds the provision of the dispositional order requiring Derrick B. to register as a sex offender, and the cause is remanded to the Court of Appeal with directions to order the juvenile court to omit that provision.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Moreno, J., concurred.