Filed 3/5/12

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| In re DAVID LUCAS ) | S181788 |
| ) | |
| on Habeas Corpus. ) | Ct.App. 3 C062809 |
| _____) | Placer County |
| ) | Super. Ct. No. SCV23989 |
| THE PEOPLE, ) | |
| ) | S182355 |
| Petitioner, ) | |
| ) | Ct.App. 2/3 B219011 |
| ) | Los Angeles County |
| v. ) | Super. Ct. No. ZM014203 |
| ) | |
| THE SUPERIOR COURT OF ) | |
| LOS ANGELES COUNTY, ) | |
| ) | |
| Respondent; ) | |
| ) | |
| CHRISTOPHER SHARKEY, ) | |
| ) | |
| Real Party in Interest. ) | |
| _____) | |

These consolidated cases raise the following question: Under the statutes and regulations applicable here, what showing must be made to postpone the filing of a sexually violent predator (SVP) petition beyond the inmate's scheduled release date to allow for the completion of a full SVP evaluation?

A petition to commit a person as an SVP may be filed only "if the individual was in custody pursuant to his or her determinate prison term, parole

1

revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed." (Welf. & Inst. Code, § 6601, subd. (a)(2).)[1]

The hold procedure of section 6601.3 allows that, "[u]pon a showing of good cause," the Board of Parole Hearings (Board) may issue a hold to extend the custody of a possible SVP "for no more than 45 days beyond the person's scheduled release date" in order to complete the evaluation required to support a commitment petition.[2]

Reading these sections together, then, the statute provides that, to be timely, a petition must be filed while the inmate is in lawful custody. The lawful custody period extends up to the release date. However, an inmate may be held for up to 45 days beyond the release date upon a showing of good cause.

In 2008, when these cases arose, section 6601.3 did not define "good cause."[3] However, the concept was addressed by regulation. California Code of Regulations, title 15, section 2600.1, subdivision (d),[4] defines "good cause" as "[s]ome evidence" that the person has a qualifying conviction and is "likely to

---

[1]   Unless otherwise indicated, all further statutory references will be to the Welfare and Institutions Code.

[2]   Except where otherwise indicated, our references to section 6601.3 will be to the statute as amended in 2000, the version in effect when these cases arose. (Stats. 2000, ch. 41, § 1, p. 129.)

[3]   In 2010, section 6601.3 was amended by adding subdivision (b), which does provide a definition of "good cause" as used in the section. "(b) For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601." (Stats. 2010, ch. 710, § 5.) The regulation has not yet been revised to track the 2010 amendment defining good cause.

[4]   For convenience, California Code of Regulations, title 15, section 2600.1 will be referred to as "regulation 2600.1."

engage in sexually violent predatory criminal behavior." (Reg. 2600.1, subd. (d)(2).) Thus, the regulation as currently written defines good cause in terms of the inmate's potential to satisfy the SVP criteria. It does not link the required showing to the need for an extension beyond the scheduled release date.

In terms of remedies, section 6601, subdivision (a)(2), specifically provides that "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law."

Petitioners Sharkey and Lucas argue that the regulation's definition of good cause is inadequate because it does not require a showing that the need for the requested delay is justified. The omission, they urge, is inconsistent with the Legislature's intent in adopting the overall statutory scheme. They claim that, because they were held beyond their scheduled release dates without a proper showing of good cause, their SVP petitions were untimely and must be dismissed. They further argue that the Board cannot rely on section 6601, subdivision (a)(2), to bar dismissal because its reliance on the defective regulation was not a good faith mistake of law.

We conclude the regulation is invalid, but that the Board's reliance upon it was excusable as a good faith mistake of law.

## I. FACTUAL AND PROCEDURAL BACKGROUND

A brief overview of the SVP procedure will put the facts here in context. The Legislature has provided that certain convicted sex offenders may be civilly committed after they have completed service of their criminal sentences. "The [SVP act] was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143-1144

3

(*Hubbart*).)" (*People v. Allen* (2008) 44 Cal.4th 843, 857 (*Allen*).) The Legislature set out a statutory scheme balancing the rights of the offender against the need for public safety. (See generally *Allen*, 44 Cal.4th at pp. 857-859; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 902-905.)

The process begins when the secretary of the Department of Corrections and Rehabilitation (DCR) determines that a person in custody because of a determinate prison sentence or parole revocation *may* be a sexually violent predator. If such an initial determination is made, the secretary refers the inmate for an evaluation. Subject to exceptions not relevant here, the secretary's referral is to be made at least six months before the inmate's scheduled release date. (§ 6601, subd. (a)(1).)

After the secretary's referral, the inmate is screened by the DCR and the Board to determine whether the person is *likely* to be an SVP. If the DCR and the Board conclude that is the case, the inmate is referred for full evaluation by the State Department of Mental Health (DMH). (§ 6601, subd. (b).)

A full evaluation is done by two practicing psychiatrists or psychologists, or by one of each profession. (§ 6601, subd. (d).) If one evaluator concludes the inmate meets the SVP criteria, but the other evaluator disagrees, two more independent evaluators are appointed. (§ 6601, subd. (e).) A petition for commitment may not be requested unless the initial two evaluators appointed under subdivision (d), or the two independent evaluators appointed under subdivision (e), agree that the inmate meets the commitment criteria. (§ 6601, subds. (d), (f).)

If, after the full evaluation is completed, the DMH concludes that the inmate is an SVP, the director of the DMH requests that a petition for commitment be filed by the district attorney or the county counsel of the county where the inmate was convicted. If upon review that official concurs, a petition for

4

commitment is filed in the superior court.  (§ 6601, subds. (h), (i).)  As noted, the petition must be filed while the inmate is in lawful custody, that is, either before the scheduled release date or while subject to a 45-day hold under section 6601.3. It is apparent that the process has a number of steps and may take some considerable time to complete.

### A.  *People v. Superior Court (Sharkey)*

Sharkey was imprisoned for forcible rape[5] and assault with intent to commit rape.[6]  His scheduled release date was November 24, 2008.  On March 12, 2008, the secretary of the DCR referred his case to the Board for further evaluation.  This referral was timely.  However, the matter was not acted upon for six months, largely because it was assigned to a part-time Board employee who was later laid off.  On September 11, 2008, the Board notified the DMH that Sharkey met the initial screening criteria.  On November 18, a DMH case worker requested a 45-day hold so that Sharkey's full psychological evaluations could be completed.  On November 20, the Board issued the hold "to facilitate full SVP evaluations to be concluded by the DMH."  By December 2, two psychologists concluded that Sharkey met the criteria for treatment under the sexually violent predator act.  (§ 6600 et seq.; (SVPA).)  On December 10, the DMH recommended that the district attorney file a commitment petition.  The petition was filed on December 23, 2008.

Sharkey moved to dismiss the petition.  He claimed he was not in lawful custody when the SVP petition was filed because no good cause showing was made to justify the 45-day hold.  The trial court granted the motion, explaining, "Under the definition of good cause in section 2600[.1] of the regulations, there is

---

[5]     Penal Code section 261, subdivision (a)(2).
[6]     Penal Code section 220.

5

good cause. There was 'some evidence' that Mr. Sharkey met both parts of the criteria listed in section 2600[.1] – a qualifying offense and a [likelihood] of engaging in sexually violent predatory behavior . . . . [¶] However, the court finds that the good cause definition set out in section 2600[.1] of the CCR is clearly erroneous. It is not a definition of good cause – a reason why more time is needed. It simply declares that if the state of the underlying evidence is satisfactory under the 'some evidence' standard, the deadline is not enforced. [¶] By analogy, a trial court can continue a felony criminal trial beyond the 60-day deadline upon a finding of good cause, i.e., a party giving a good reason why the trial cannot timely go forward. Good cause in that context is not established by showing that probable cause exists [to believe] that defendant committed the charged crime. That the evidence satisfies the probable cause standard does not release the parties from having to give a good reason why they cannot meet the statutory deadline. [¶] Similarly, because 'some evidence' exists that an inmate meets the criteria as a SVP cannot establish good cause" why the filing deadline cannot be met.

In other words, the trial court held that the regulatory definition of "good cause" is invalid because it does not define what kind of showing would be sufficient *to justify the requested delay*. The regulation simply provides that inmates can be held beyond their scheduled release dates if there is some evidence they are likely to be found SVP's.

The trial court further ruled that the Board's reliance on the regulation's definition of "good cause" could not be excused as a good faith mistake of law "because the regulation eviscerates the common legal definition of good cause."

The People sought a writ of mandate from the Court of Appeal to overturn the dismissal and reinstate the SVP petition. The Court of Appeal issued the writ. It held the regulation's "good cause" definition is valid because it fell within the

6

scope of the Board's authority and is reasonably necessary to effectuate both the purpose of section 6601.3 and of the SVPA generally. In addition, the regulation was formally adopted under the Administrative Procedure Act (Gov. Code, § 11340 et seq.) and embodies a long-standing statutory interpretation. For these reasons the regulation was entitled to judicial deference.

The Court of Appeal further held that even if the regulation is invalid, reliance on it was excusable as a good faith mistake of law. "[T]he trial court should have recognized that absent a judicial determination of invalidity, the Board and the People were entitled to rely on the regulation . . . ."

The Court of Appeal issued a writ of mandate directing the superior court to vacate its dismissal of the petition to commit Sharkey as an SVP, to enter a new order denying the dismissal motion, and to set the matter for SVPA proceedings. We granted Sharkey's petition for review.

### B. *In re Lucas on Habeas Corpus*

Lucas went to prison for failing to register as a sex offender.[7] His scheduled release date was October 12, 2008. On December 21, 2007, the DCR secretary determined that Lucas met initial SVP screening standards. Among other offenses, he had been convicted of lewd and lascivious acts with a minor,[8] which involved intercourse and sodomy with an eight-year-old girl. The screening form was not received by the DCR's classifications services unit until October 1, 2008, 11 days before Lucas's scheduled release date. The record contains no explanation for this delay. The DCR referred the matter to the Board the next day, and on October 7, the Board referred it to the DMH. On October 9, the Board issued a 45-day hold "to facilitate full SVP evaluations to be concluded by DMH."

---

[7] Penal Code section 290.
[8] Penal Code section 288.

7

During the hold period, three of the four psychologists who evaluated Lucas concluded that he met the SVP criteria, and the district attorney filed a commitment petition.

Lucas moved to dismiss the petition. Like Sharkey, he argued he was not in lawful custody when the SVP petition was filed because good cause had not been shown for the 45-day hold.[9] The motion was denied. Lucas's petition for writ of habeas corpus to review this decision was denied by the appellate division of the superior court.

When Lucas sought habeas corpus relief in the Court of Appeal, it issued an order to show cause "limited to the claim that [Lucas]'s extended commitment under Welfare & Institutions Code section 6601.3 was unlawful because there was no 'showing of good cause' as required by this statute."

The Court of Appeal held the regulation invalid. "Because regulation 2600.1[, subdivision](d) purports to allow a finding of good cause for a 45-day hold based solely on evidence that the inmate may be a sexually violent predator, and does not require a showing of exceptional circumstances that precluded the completion of the sexually violent predator evaluation within the normal timeframe, the regulation is invalid, as it is inconsistent with the legislative intent behind section 6601.3." However, the court concluded that the Board's reliance on the regulation's definition of "good cause" was excusable as a good faith mistake of law. "When the board placed the 45-day hold on Lucas in October 2008, there was no judicial or administrative decision that had addressed the validity of regulation 2600.1[, subdivision](d), and the regulation was, to all

---

**9**     Lucas also claimed that he was denied due process of law because his SVP petition was not tried before his scheduled release date. He does not renew that claim here.

8

appearances, valid.  Thus, the board could have relied in good faith on that regulation in placing the hold on Lucas."  Accordingly, the court discharged the order to show cause and denied the habeas corpus petition.  We granted Lucas's petition for review.

## II.  DISCUSSION

### A.  The Regulatory Definition of "Good Cause" Is Invalid

"It is well settled that the proper goal of statutory construction 'is to ascertain and effectuate legislative intent, giving the words of the statute their usual and ordinary meaning.  When the statutory language is clear, we need go no further.  If, however, the language supports more than one reasonable interpretation, we look to a variety of extrinsic aids, including the objects to be achieved, the evils to be remedied, legislative history, the statutory scheme of which the statute is a part, contemporaneous administrative construction, and questions of public policy.  (*In re Derrick B.* (2006) 39 Cal.4th 535, 539.)' (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 783.)" (*People v. Ramirez* (2009) 45 Cal.4th 980, 987.)

Here, the statute was not clear on its face.  Indeed, when these cases arose the Legislature provided no definition of "good cause" in section 6601.3  It has long been recognized that "[t]he term 'good cause' is not susceptible of precise definition.  In fact, its definition varies with the context in which it is used." (*Zorrero v. Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439.) Therefore, it is appropriate to resort to extrinsic sources to determine legislative intent and construe the applicable administrative regulations.

The Legislature provided that an inmate could be held beyond the release date upon a showing of "good cause."  (§ 6601.3.)  Because the Legislature did not define what kind of showing would be sufficient to demonstrate the existence of good cause, it fell to the Board to define that term by regulation.  "When an

9

administrative agency construes a statute in adopting a regulation or formulating a policy, the court will respect the agency interpretation as one of several interpretive tools that may be helpful. In the end, however, '[the court] must . . . independently judge the text of the statute.' (*Yamaha Corp. of America v. State Board of Equalization* (1998) 19 Cal.4th 1, 7–8.)" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 322; accord, *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1106.) We do not accord deference to an interpretation that is clearly erroneous. (*Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1265; *Yamaha Corp. of America*, *supra*, 19 Cal.4th at p.14; *People ex rel. Lungren v. Superior Court* (1996) 14 Cal.4th 294, 309.) If a regulation does not properly implement the statute, the regulation must fail.

This regulation is deficient. It fails because it links good cause to the wrong showing. The showing required by section 6601.3 is not a demonstration of good cause to believe an inmate may be, or is likely to be, an SVP. Those questions are determined under section 6601, subdivisions (a)(1) and (b). Instead, the showing required under section 6601.3 is that good cause justifies a delay in filing the petition beyond the inmate's scheduled release date. This interpretation is supported by an examination of the legislative scheme itself.

By the time a request for a hold is filed, a preliminary determination that an inmate may be an SVP has already been made more than once. First, the DCR secretary determines an inmate "*may* be a sexually violent predator." (§ 6601, subd. (a)(1), italics added.) This determination cannot be made arbitrarily, but must be based on some evidence. Upon the secretary's referral, the DCR and the Board perform a screening to determine whether the inmate "is *likely* to be a sexually violent predator." (§ 6601, subd. (b), italics added.) Indeed, the statute requires that the process be conducted using a "structured screening instrument" developed and updated by the DMH in consultation with the DCR. (*Ibid.*) Again,

10

the requirement of a determination implies that there is some evidence to support it. Logically, section 6601.3's provision for a hold beyond the scheduled release date requires a good cause showing different from those determinations required to put the process in motion in the first place. If the Board could find good cause for a 45-day hold based solely on a showing of some evidence that an inmate met the SVP criteria, the exception would swallow the rule.

This conclusion is further supported by the legislative history of the amendment that made the good cause requirement a part of section 6601.3. (Stats. 2000, ch. 41, § 1, p. 129.) Section 6601.3 was first added to the SVP scheme in 1996. It originally empowered the Board to order that an inmate remain in custody for no more than 45 days to facilitate evaluation, but made no mention of a good cause showing. (Stats. 1996, ch. 4, § 2, p. 16.) According to a committee analysis, the purpose of the 2000 amendment was to clarify "that an inmate referred to the [sexually violent predator] process may be detained 45 days beyond the scheduled release date, in order to cover situations in which an inmate's release date may be unexpectedly moved up, or when a parole revocation term allows insufficient time to complete the evaluation process." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 451 (1999–2000 Reg. Sess.) Apr. 12, 2000, pp. 1–2, underscoring omitted.)

The amendment clarified the Legislature's intent to authorize the grant of a hold if good cause could be shown. It can reasonably be inferred that the Legislature intended that the required showing justify the extension, which it had taken pains to make available, as an exception to the general requirement that a commitment petition be filed before the scheduled release date.

We emphasize that our construction of the term "good cause" is specific to this statutory framework. " 'When related to the context of the statute, "good cause" takes on the hue of its surroundings, and . . . must be construed in the light

11

reflected by its text and objectives.' " (*Cal. Portland Cement Co. v. Cal. Unemp. Ins. Appeals Board* (1960) 178 Cal.App.2d 263, 273.)

In *Lucas*, the Attorney General concedes the regulation is invalid.[10]  In *Sharkey*, the district attorney claims it is valid.  However, the district attorney fails to grapple with either the overall approach taken by the Legislature or section 6601.3's legislative history.

The district attorney argues, in essence, that a good cause showing of need for a 45-day hold should not be required because to do so would prevent the Board from carrying out the legislative purpose of the SVPA.  It is true that the SVPA was enacted to protect the public and provide treatment beyond an inmate's determinate prison commitment.  (See generally *Allen, supra,* 44 Cal.4th at p. 857; *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143–1144 (*Hubbart*).)  However, both the public *and* the inmate have interests at stake in an SVP proceeding.  An inmate's individual interests include the limitations on liberty, stigma, and subjection to unwanted treatment consequent upon an SVP finding.  (*Allen*, *supra*, 44 Cal.4th at p. 863.)  To allow the Board to place a 45-day hold without a showing that more time is legitimately required to complete an evaluation would deny an inmate these important liberty interests, and undermine the balance among competing interests the Legislature sought to achieve.

The district attorney's analysis reads the statutes and regulation together as follows.  Once determinations are made that an inmate *may* be an SVP (§ 6601,

---

[10]     In the Court of Appeal in *Lucas*, the Attorney General took the position that the regulation was valid.  "Good cause exists if the person in custody may be an SVP."  Now the Attorney General argues that, "based on legislative intent . . . , 'good cause' in this statute requires a showing that, due to exigent circumstances, such as when an inmate's release date is unexpectedly moved up, or where there is a shorter parole revocation term, it is difficult or impossible to timely complete a full evaluation of an inmate" before the scheduled release date.

subd. (a)(1)) and that he or she is *likely* to be an SVP (§ 6601, subd. (b)), a petition must be filed before the inmate's scheduled release, plus 45 days. Good cause would support a 45-day extension in every case because every inmate referred for a full screening would, of necessity, have been found to meet the criteria applied in screenings under subdivisions (a)(1) and (b). Such an interpretation would allow the regulatory provision implementing the 45-day hold to completely vitiate the statutory requirement of filing before the release date except in limited circumstances.

**B. Reliance Was Excusable as a Good Faith Mistake of Law**

While the Courts of Appeal in *Sharkey* and *Lucas* differed on whether regulation 2600.1, subdivision (d)'s definition of good cause was deficient, they both went on to conclude that the Board's reliance on the regulation was excusable as a good faith mistake of law because it had not been called into question in any earlier administrative or judicial decision.

As noted, section 6601, subdivision (a)(2), provides that "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law."

The legislative history of section 6601, subdivision (a)(2) reveals that a "good faith mistake of law" as used there is one that does not involve " 'negligent or intentional wrongdoing' " by correctional authorities. (*In re Smith* (2008) 42 Cal.4th 1251, 1260; see *id.* at pp. 1259-1261 (*Smith*).) We reviewed the legislative history in *Smith* and concluded the statute was intended to codify the holding of *People v. Superior Court (Whitley)* (1999) 68 Cal.App.4th 1383 (*Whitley II*). Prior to *Whitley II*, in *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864 (*Whitley I*), a trial court had dismissed SVP proceedings against Whitley for lack of probable cause. However, instead of releasing him, the Board revoked his parole under a

13

regulation that purported to authorize parole revocation for psychiatric treatment. Whitley successfully challenged the regulation in *Whitley I*. There the court held that the regulation exceeded the Board's authority because it was basically an end-run around the procedural protections of the SVP Act. (*Smith*, 42 Cal.4th at p. 1259.)

Whitley II, *supra*, 68 Cal.App.4th 1383, involved the question whether Whitley was entitled to release because the Board mistakenly relied on the invalid regulation to revoke his parole. The *Whitley II* court concluded that he remained subject to SVP proceedings. " '[T]he record in the present case does not indicate negligent or intentional wrongdoing by the Department of Corrections in revoking Whitley's parole for psychiatric conditions based on [Cal. Code Regs., tit. 15, § 2616, subd. (a)(7)]. The department's error in revoking his parole on that basis resulted from its mistake of law concerning the scope of its broad statutory authority to establish and enforce regulations governing parole. Until we decided [*Whitley I*], there was no controlling judicial decision directly on point . . . . Given these factors and in light of the serious public safety purpose underlying the Act, we conclude that despite the department's legal error, the trial court had jurisdiction or power to consider the People's latest petition for Whitley's commitment.' (*Whitley II*, *supra*, 68 Cal.App.4th at pp. 1389-1390.)" (*Smith*, *supra*, 42 Cal.4th at p. 1260.)

In *Smith*, *supra*, 42 Cal.4th 1251, we noted that when section 6601, subdivision (a)(2) was added to the SVP Act in 1999, "legislative committee analyses made clear that it was intended to adopt a rule similar to the holding in *Whitley II*. The Senate Committee on Public Safety's analysis of the amendment states that it was 'a response to [*Whitley I*], in which the Court of Appeal barred SVP proceedings against inmate Whitley . . . . [¶] In [*Whitley II*], . . . the court held that because [the Board of Prison Terms] and the [Department of Corrections]

14

did not unlawfully hold Whitley in custody through "negligent or intentional wrongdoing," an SVP petition against Whitley could proceed.' (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 11 (1999-2000 Reg. Sess.) as amended Mar. 23, 1999, pp. 3-4.) . . . [¶] . . . [¶] An Assembly Republican bill analysis stated: 'The bill responds to an ambiguity created by an appellate court decision and makes it clear that sexually violent predators are not to be unleashed on society simply because "the constable has blundered." ' (Assem. Com. on Public Safety, Republican Analysis of Sen. Bill No. 11 (1999-2000 Reg. Sess.) as amended Apr. 6, 1999, p. 1.)" (*Smith*, *supra*, 42 Cal.4th at pp. 1260-1261.)

The mistake of law in the cases at bar is essentially similar to that in *Whitley II*. Just as in *Whitley II*, the Board here relied on a regulation that was later held to be clearly invalid. However, although the regulation's invalidity is readily apparent to us now, the Board cannot be faulted for not having anticipated our decision, given that no previous judicial decision questioned its validity and that the Courts of Appeal in these very cases split on the question.[11] Moreover, the Board's interpretation of "good cause" is contained in a regulation formally adopted pursuant to the Administrative Procedure Act (Gov. Code, § 11340 et. seq.). " ' "[A]n interpretation of a statute contained in a regulation adopted after public notice and comment is more deserving of deference than [one] contained in an advice letter prepared by a single staff member." ' " (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 801.) Finally, the regulation is entitled to

---

[11] Petitioners argue that unexcused delay in handling their evaluations precluded a finding that the orders extending their custody were the products of a good faith mistake of law. However, as we have explained, at the time the extension orders were made, the Board was entitled to rely on regulation 2600.1, subdivision (d), which did not require a good cause showing to excuse delay.

15

"greater deference" because it embodies a statutory interpretation that the Board has consistently maintained and that has gone unchallenged for over 13 years. (*Ibid*.) Accordingly, in the absence of any indication of negligent or intentional wrongdoing by correctional authorities, we conclude that the Board's reliance on the regulation here was excusable as a good faith mistake of law.

Petitioners disagree. They make alternative arguments in support of their contention that the Board's reliance on the regulation was not excusable.

First, petitioners claim that the Board failed to follow the procedure set out in the regulation for issuing a 45-day hold. They point to subdivision (a) of regulation 2600.1, part of the same regulation that, in subdivision (d), defines good cause for a 45-day extension. Subdivision (a) permits a hold for up to three days beyond the scheduled release date. By its terms, subdivision (a) applies when "exceptional circumstances preclude an earlier evaluation."[12]

Petitioners claim that in order to grant a 45-day extension order under regulation 2600.1, subdivision (d), the Board "must first comply with subdivision (a)'s 3-day hold requirement." They conclude that "[i]t would constitute an absurd result if the imposition of a 3-day hold required a finding of 'exceptional circumstances' while the imposition of a 45-day hold did not."

---

[12]     Regulation 2600.1, subdivision (a) provides: "Upon notification from the Division of Adult Institutions, Department of Mental Health, or Board of Parole Hearings (board) staff that either an inmate or parolee in revoked status may or does require a full evaluation pursuant to subdivisions (c) through (i) inclusive of Welfare and Institutions Code section 6601 to determine whether that person may be subject to commitment as a sexually violent predator, the board may order imposition of a temporary hold on the person for up to three (3) working days beyond their scheduled release date pending a good cause determination by the board pursuant to section 6601.3 of the Welfare and Institutions Code where exceptional circumstances preclude an earlier evaluation by the person pursuant to section 6601 of the Welfare and Institutions Code."

16

The premise of petitioners' argument is faulty. Petitioners urge that a three-day hold is a condition precedent to the grant of a 45-day hold. But that is not the case. A three-day hold under regulation 2600.1, subdivision (a) is an available, but not a mandatory, provision.

The statutory provision contemplates that the determinations required by section 6601, subdivision (a)(1) (an inmate may be an SVP) and subdivision (b) (an inmate is likely to be an SVP) will be made substantially earlier in the process. As noted, the secretary's referral is to be made at least six months before the scheduled release date. The DCR and Board screening must generally be done in time to allow for a full evaluation by up to four psychiatrists or psychologists, the preparation of their reports, a final DMH determination, and a review by the district attorney or county counsel prior to the filing of a commitment petition. Regulation 2600.1, subdivision (a), is a safety valve that allows an extra three days when exceptional circumstances have precluded "an earlier evaluation [of] the person pursuant to section 6601 . . . ."

Nowhere has the Legislature by statute, or the Board by regulation, required that a three-day hold be granted before a 45-day extension may be sought. Indeed, in neither of these cases was a three-day hold requested or granted. There was no need. Here, the initial determinations of section 6601, subdivisions (a) and (b) were made but a referral for a full evaluation had not been made. The recognition that the release date was imminent occurred with sufficient time to permit the Board to act on a 45-day extension request.

The three-day hold provision of regulation 2600.1 is also intended to apply when there is not enough time before the inmate's release date for the Board to make the "good cause" determination required for a 45-day hold. Subdivision (a) explains that if the Board's staff informs the Board that the inmate "may or does" need a full evaluation, the Board may impose a three-day hold pending its good

17

cause determination. Subdivision (b) of regulation 2600.1 says that during the three-day hold, the staff must document that the inmate has been screened or is in the process of being screened, and that the Board's "good cause" determination must occur during this three-day period. Even if the *staff* has already decided that the inmate "does" need a full evaluation, the *Board* may need three days to confirm that determination and authorize a 45-day hold. However, there is nothing to suggest that the Board has to impose a three-day hold if it does not need that time to decide on a 45-day hold. (Reg. 2600.1, subds. (a), (b).)

Next, petitioners argue that, contrary to the position taken by the DCR here, the legislative history of section 6601.3 reveals that the DCR has always understood that 45-day holds require a showing that exceptional circumstances prevent the timely completion of SVP evaluations. Petitioners rely on the following statement regarding the purpose of section 6601.3 by the Youth and Adult Correctional Agency in an enrolled bill report.[13] "[T]here will always be inmates whose release dates are advanced through judicial or administrative action so as to collapse the 6 month lead time, either before the process of referral has begun or before a probable cause determination can be made. The new regulation, based on apparent legislative intent that referrals not be released prior to a probable cause determination . . . serves this purpose, and is by this amendment explicitly included in the SVP law." (Cal. Youth and Adult Correctional Agency,

---

[13] "Generally, 'enrolled bill' refers to a bill that has passed both houses of the Legislature and that has been signed by the presiding officers of the two houses. (1 Sutherland, Statutes and Statutory Construction (6th ed. 2002) § 15:1, p. 814.)" (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 40.) "An 'enrolled bill report' is prepared by a department or agency in the executive branch that would be affected by the legislation. Enrolled bill reports are typically forwarded to the Governor's office before the Governor decides whether to sign the enrolled bill." (*Ibid.*)

18

Enrolled Bill Rep. on Assem. Bill No. 1496 (1995-1996 Reg. Sess.) Jan. 25, 1996, p. 2 (Enrolled Bill Report).)

Petitioners misapprehend the legislative history. A careful reading of the history of section 6601.3 and of regulation 2600.1 reveals that the Board has consistently understood section 6601.3 to authorize the issuance of a 45-day hold upon a showing that "some evidence" indicates a suspected SVP meets the SVPA's criteria.

The basic provisions of the SVPA were enacted in 1995 and took effect on January 1, 1996. (*Hubbart*, *supra*, 19 Cal.4th at p. 1143.) Section 6601.3 was not part of the original enactment. (See Stats. 1995, ch. 763, § 3, pp. 5922-5929.)

On December 26, 1995, regulation 2600.1 was filed as an emergency measure, to become effective on January 1, 1996. The regulation's stated purpose was to "provide a mechanism for screening" suspected SVP's "where exceptional circumstances preclude an earlier evaluation and judicial determination of probable cause."[14] (Reg. 2600.1, former subd. (a), Register 96, No. 23 (June 7, 1996) p. 91.) The regulation provided for 45-day holds if the Board found "probable cause" to believe a suspected SVP met the act's criteria. (Reg. 2600.1, former subd. (c).) "Probable cause" for a 45-day hold was defined as requiring a showing of "[s]ome evidence" that the criteria were met. (*Ibid.*)

Regulation 2600.1 took effect before section 6601.3 did. Section 6601.3 was added to the statutory scheme several weeks later as a "clean up" provision. It

---

[14] After a petition has been filed a judge determines whether it asserts facts sufficient to constitute probable cause to believe the inmate is "likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the judge makes that probable cause finding, the person is to be detained in a secure facility pending a hearing. (*Ibid.*) At the probable cause hearing the inmate is entitled to representation by counsel. (§ 6602.) If probable cause is found, the matter proceeds to trial. (§§ 6602, 6603.)

19

was approved by the Governor on January 25, 1996, and became effective immediately as urgency legislation. (Stats. 1996, ch. 4, §§ 2, 5, pp. 16-17.) As originally enacted, section 6601.3 did not require a showing of either "probable cause" or "good cause" for the issuance of a 45-day hold. Instead, it provided only that "[t]he Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days for full evaluation pursuant to subdivisions (c) to (h),[15] inclusive, of Section 6601, unless his or her scheduled date of release falls more than 45 days after referral." (§ 6601.3, former subd. (a), added by Stats. 1996, ch. 4, § 2, p. 16.)[16]

The Board construed section 6601.3 as impliedly incorporating into the SVPA the 45-day hold procedure the Board had earlier adopted in regulation 2600.1. In the enrolled bill report relied upon by petitioners, the Youth and Adult Correctional Agency stated that section 6601.3 "places the parole hold procedure adopted as regulation by the Board of Prison Terms into the body of the statutory scheme." (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep., *supra*, at p. 2.) As noted, when the enrolled bill report was written, the only required showing under the regulation was "[s]ome evidence" that the SVPA criteria were met. (Reg. 2600.1, former subd. (c), Register 96, No. 23 (June 7, 1996) pp. 91-92.) Nowhere does the applicable legislative history reveal that the corrections agency understood that a 45-day hold required a demonstration of exceptional circumstances.

---

**15** The 1996 statute, in speaking of "subdivisions (c) to (*h*), inclusive, of Section 6601," referred to an earlier version of the statute. (Italics added.)
**16** Section 6601.3 was reenacted without change after a sunset provision in the original measure took effect in 1998. (Stats. 1998, ch. 19, § 1, p. 145.)

Only in 2000 was section 6601.3 amended to require that "good cause" be shown for the imposition of 45-day holds.[17]  Regulation 2600.1 was not amended until 2007, when the term "good cause" was substituted for the term "probable cause."  The amended regulation then provided, as it does now, that "good cause to place a 45-day hold" existed when there was "[s]ome evidence" the person had committed a specified offense and was likely to engage in sexually violent predatory criminal behavior.  (Reg. 2600.1, subd. (d), Register 2007, No. 48 (Nov. 30, 2007) p. 93.)  Not until 2010 did the Legislature amend section 6601.3 to make explicit the meaning of "good cause" that we find implicit in the statutory scheme.[18]

For the foregoing reasons, the Board's reliance here on the regulation's definition of "good cause" was excusable as a good faith mistake of law.

---

[17]  "Upon a showing of good cause, the Board of Prison Terms may order that a person referred to the State Department of Mental Health pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601."  (§ 6601.3, as amended by Stats. 2000, ch. 41, § 1, p. 129, eff. June 26, 2000.)

[18]  As earlier stated, after these cases arose, section 6601.3 was amended again.  New subdivision (b) provides that, "[f]or purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601."  (§6601.3, subd. (b), as added by Stats. 2010, ch. 710, § 5.)

21

### III. DISPOSITION

In *People v. Superior Court (Sharkey)*, S182355, we affirm the judgment of the Court of Appeal directing the superior court to vacate its order dismissing the petition to commit Sharkey as an SVP, and to set the matter for proceedings pursuant to the SVPA. In *In re David Lucas*, S181788, we affirm the judgment of the Court of Appeal discharging the order to show cause and denying the habeas corpus petition.

**CORRIGAN, J.**


**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

**CONCURRING AND DISSENTING OPINION BY KENNARD, J.**


Under California law, a petition to commit a person as a sexually violent predator must be filed while the person is in lawful custody. (Welf. & Inst. Code, § 6601, subd. (a)(2); unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.) In 2000, the Legislature imposed a requirement on what is now the Board of Parole Hearings (Board) that "good cause" be shown before extending the custody period up to "45 days beyond the person's scheduled release date . . ." (§ 6601.3, subd. (a)), thus extending the time for filing the petition. The statute did not define the term "good cause." That term has generally been considered as referring to "a legally sufficient ground or reason for a certain action." (*Zorrero v. Unemployment Ins. Appeals Bd.* (1975) 47 Cal.App.3d 434, 439.) In this case, the "certain action" to be taken pertains to extending a person's custody. Therefore, the mention of "good cause" in section 6601.3's subdivision (a) requires a legally sufficient reason for extending custody.

At issue here is the Board's 2007 regulation defining good cause. The Board's definition of good cause turns on the existence of a qualifying conviction and " '[s]ome evidence' that the person is likely to engage in sexually violent predatory criminal behavior." (Cal. Code Regs., tit. 15, § 2600.1, subd. (d)(2); maj. opn., *ante*, at pp. 2-3.) But that determination is wholly unrelated to *why* the Board needs to extend a person's custody "beyond the person's scheduled release date . . . ." (§ 6601.3, subd. (a).) Therefore, the regulation does not implement the

1

statutory requirement that "good cause" be shown justifying the Board's extension of a person's custody. I thus agree with the majority that the regulation is invalid.

I disagree, however, with the majority's further conclusion that petitioner Lucas and defendant Sharkey are not entitled to relief because, in extending custody beyond the scheduled release date, the Board made a good faith mistake of law. (See § 6601, subd. (a)(2) [stating that unlawful custody is not a ground for dismissing a petition to commit a person as a sexually violent predator if such custody was "the result of a good faith mistake of fact or law"].) I explore that issue below.

The Legislature imposed the good cause requirement on the Board in 2000. (Stats. 2000, ch. 41, § 1, p. 129.) Before that time, the custody extension statute (former § 6601.3; Stats. 1996, ch. 4, § 2, p. 16), enacted in 1996, lacked such a requirement. The Board's then existing regulation, adopted *before* the 1996 statute, mentioned that custody extensions had to be based on "probable cause," which the regulation defined as "some evidence" that the person met the sexually violent predator criteria set forth in the statutory scheme. According to the majority, the Board could in good faith have concluded that the Legislature's 1996 enactment, which made no reference to either probable cause or good cause, ratified the Board's preexisting "probable cause" regulation. (Maj. opn., *ante*, at p. 20.) For reasons discussed below, I do not share that view.

The Board's pre-1996 "probable cause" regulation suffers from the same defect as the Board's post-2007 "good cause" regulation. Neither is based on reasons *why* the Board needs to extend custody. (The record reveals that defendant Sharkey's custody was extended because a particular part-time employee of the Board had been laid off. As to petitioner Lucas, the record has no explanation for the extension of custody.)

2

In either instance, the Board defines probable cause and good cause as "some evidence" that the person is likely to engage in sexually violent predatory behavior. That definition is substantially similar to the test the Department of Corrections and Rehabilitation applies at the first stage in the process that leads to having a person in lawful custody committed as a sexually violent predator. That stage requires a determination by the department that a person "may be a sexually violent predator," a determination that must be made "at least six months" *before* a person's scheduled release date. (§ 6601, subd. (a)(1).) Here, the Board could not in good faith have mistakenly concluded that the "good cause" requirement of section 6601.3's subdivision (a) contemplated only that the Board needed to make the same finding that the department has already made months earlier. To ascribe such a good faith belief to the Board, as the majority does, would mean the existence of good cause to extend a person's custody in every case.

I would reverse the judgment of the Court of Appeal in each of these two consolidated cases.

KENNARD, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Superior Court (Sharkey) and In re Lucas
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX183 Cal.App.4th 85 and 182 Cal.App.4th 797
**Rehearing Granted**

_____

**Opinion No.** S182355 & S181788
**Date Filed:** March 5, 2012
_____

**Court:** Superior
**County:** Los Angeles and Placer
**Judge:** Maria E. Stratton and Colleen Nichols

_____

**Counsel:**

Steve Cooley, District Attorney, Irene Wakabayashi, Head Deputy District Attorney, and Shirley S. N. Sun, Deputy District Attorney, for Petitioner the People in No. S182355.

Richard A. Ciummo & Associates, Jonathan Richter and Richard H. Kohl for Petitioner David Lucas in No. S181788.

No appearance for Respondent Superior Court in No. S182355.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Jeffrey D. Firestone, Julie A. Hokans and Jennifer M. Poe, Deputy Attorneys General, for Respondent State of California in No. S181788.

Michael P. Judge, Public Defender, Albert J. Measter, Karen King and Jack T. Weedin, Deputy Public Defenders, for Real Party in Interest Christopher Sharkey in No. S182355.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Shirley S. N. Sun
Deputy District Attorney
320 West Temple Street, Suite 540
Los Angeles, CA  90012-3213
(213) 893-0632

Richard H. Kohl
Richard A. Ciummo & Associates
11760 Atwood Road, Suite 4
Auburn, CA  95603
(530) 889-0280

Jennifer M. Poe
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 324-5474

Jack T. Weedin
Deputy Public Defender
320 West Temple Street, Suite 590
Los Angeles, CA  90012
(213) 974-3067