Filed 7/21/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B256043 |
| | (Super. Ct. No. F423616) |
| Plaintiff and Respondent, | (San Luis Obispo County) |
| v. | |
| JAMES ALLEN HYDRICK, | |
| Defendant and Appellant. | |

The Welfare and Institutions Code provides procedures the state must follow before a prisoner may be committed as a sexually violent predator (SVP).[1] For "good cause" a prisoner may be held beyond the prisoner's release date for 45 days to complete a full evaluation to determine whether the prisoner qualifies as an SVP.

We conclude that "a full evaluation" includes the prosecuting attorney's decision to file a petition.

A jury found James Allen Hydrick to be an SVP. (§ 6600 et seq.) We affirm.

---

[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

FACTS

Hydrick was convicted of various sexual offenses.

[[Because Hydrick does not challenge the sufficiency of the evidence, only a brief synopsis of the facts is necessary.

## Qualifying Offenses

Hydrick was 19 years old in 1977. He was in a van with three other men. They saw 25-year-old Mark S. Mark S. was out of gas and trying to flag down a ride to a gas station. The men forced Mark S. into the van, blindfolded him, cut off his clothes and tied his hands behind his back. While one of the men drove the van, two others put their penises in his mouth. Someone tried to penetrate his anus with a glass object. They went to Mark S.'s apartment and burglarized it. After the men drove around for an hour, they threw Mark S. out of the van. Hydrick was convicted of, among other offenses, oral copulation in concert with force. Mark S. testified at this hearing.

In 1988, Hydrick was convicted of multiple counts of molesting six boys. One of the boys was 15 years old at the time he was molested, the rest were between 11 and 13 years old. A boy is considered prepubescent if he is 13 years old or younger. Hydrick used martial arts and magic tricks to ingratiate himself with the boys. The six victims testified at the hearing.

## Expert Testimony

Psychologist George Grosso testified as an expert. Since 2004, he has conducted about 1,000 SVP evaluations.

Grosso testified Hydrick met the criteria for an SVP. The 1997 kidnapping and forced oral copulation were qualifying offenses. In addition, he testified the molestations of six prepubescent boys were qualifying offenses. Hydrick showed predatory behavior by grooming the victims with martial arts and magic tricks.

Grosso diagnosed Hydrick with pedophilic disorder. When a person has sexual fantasies or urges about prepubescent children, it is called pedophilia. When a person acts on the fantasies or disorders, it is called pedophilic disorder. Pedophilic

2

disorder is a life-long condition that can wax and wane with life stressors. Hydrick also suffers from psychopathy. Such persons are impulsive and have little empathy. Psychopathy makes it difficult to control pedophilic behavior.

Finally, Grosso testified Hydrick is likely to reoffend in a sexually violent manner. Grosso based his opinion on static assessment tools including the Static 99R and the Static 2002R. Hydrick scored high on these tests. In addition, Hydrick refused to fully participate in a sex offender treatment program. He occasionally took classes but did not follow prescribed treatments. Hydrick claimed he did not need treatment because he was not interested in children.

Psychologist Robert Owen also testified as an expert. Since 1996, he has done about 1,200 SVP evaluations. He opined that Hydrick is an SVP for reasons substantially the same as those stated by Grosso.

Owen also stated most pedophilic men in custody do not cut out pictures of children or obtain child pornography. Many show no sexual deviancy while in custody, but would reoffend when they got out.

Defense

Hydrick testified on his own behalf. He said he was born in February 1959. His mother was 13 when he was born and his father was 36. His father abused him, his siblings and his mother. He was chained to a tree for months at a time and had to sleep in a chicken coop.

Hydrick testified that when Mark S. was kidnapped in 1977, he sat in the back of the van and did not participate. He was shocked at how the other men treated the victim. He pled no contest to robbery, kidnapping and oral copulation in concert with force.

Hydrick denied he molested any children. He claimed his plea of guilty to 11 of 17 molestation charges was the result of having been injected with Haldol at the jail. He said he did not have a sexual problem and would not enroll in a sexual offender

3

treatment program. He was sentenced to 17 years. He said he should have served nine years. His original release date was June 8, 1998, but the SVP law was passed in 1996.

Defense Experts

Psychologist Hillard Trytten testified that Hydrick had done individual therapy with her and was in one of her groups. Trytten did not see any manifestation of pedophilia in Hydrick. She was aware, however, that Hydrick scored high on the psychopathy check list.

Psychologist Robert Halon testified there is research that concluded it is impossible to diagnose pedophilia or pedophilic disorder. It is difficult to distinguish between someone with a mental disorder and someone who wants to engage in criminal activity. Halon opined Hydrick had not shown signs of pedophilia since his 1988 conviction. Halon does not believe Hydrick suffers from pedophilia or pedophilic disorder.

Psychologist Carolyn Murphy also found that Hydrick does not have a pedophilic disorder. She said his sexual conduct was indiscriminate and that his focus was more impulsivity than children.]]

PROCEDURAL FACTS AND DISCUSSION

I

Hydrick contends the SVP commitment petition was not timely.[2]

Hydrick's scheduled release date from his prison sentence was September 10, 2008.

On March 5, 2008, the California Department of Corrections and Rehabilitation (CDCR) sent a memorandum to the Board of Parole Hearings (Board) requesting further documentation because it did not have sufficient information to determine whether Hydrick qualified as an SVP. On August 11, 2008, the Board responded with a letter to the Department of Mental Health (DMH), stating that Hydrick

---

[2] We grant Hydrick's motion for judicial notice filed April 7, 2015, concerning various levels of screening for SVP's.

4

met the first level SVP criteria. On August 20, a level 2 evaluation was completed, finding that a level 3 evaluation was required. On August 26, Hydrick was interviewed by Doctors Jesus Padilla and Robert Owen as part of the level 3 SVP evaluation. By September 3, Padilla and Owen had submitted lengthy reports concluding that Hydrick met the SVP criteria.

On September 9, 2008, the day before Hydrick's scheduled release date from prison, the Board issued a 45-day hold pursuant to section 6601.3.

On September 10, 2008, the DMH sent a letter to the San Luis Obispo County District Attorney, referring Hydrick for SVP commitment proceedings. On October 8, the district attorney filed an SVP commitment petition.

An SVP petition may be filed while the defendant is in lawful custody, including a 45-day hold placed pursuant to section 6601.3. (§ 6601, subd. (a)(2).) In 2008, section 6601.3 provided that, upon a "showing of good cause," the Board may order a person determined by the CDCR to be an SVP to "remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i) inclusive, of section 6601."

In 2008, the "good cause" required to satisfy a 45-day hold was defined in the California Code of Regulations as "[s]ome evidence" that the person has a qualifying conviction and is "likely to engage in sexually violent predatory criminal behavior." (Former Cal. Code Regs, tit. 15, § 2600.1, subd. (d)(2).)

This "good cause" requirement was short-lived. In 2012, our Supreme Court decided *In re Lucas* (2012) 53 Cal.4th 839. The court held the definition of "good cause" in the Code of Regulations was invalid because it linked good cause to showing that the person is likely to be an SVP, rather than showing justification for the delay in filing the petition. (*Id.* at pp. 849-851.) Nevertheless, the court found reliance on the regulation was excusable as a good faith mistake of law. (*Id.* at p. 852.)

Hydrick argues that the 45-day hold was not permitted in this case because by the time the 45-day hold was imposed, full evaluations had already been completed.

5

Section 6601.3, however, allows a 45-day hold for full evaluations "pursuant to subdivision (c) to (i) inclusive, of section 6601." Section 6601, subdivision (i) includes, within the ambit of a full evaluation, the district attorney's decision to file a petition. Because the district attorney's evaluation had not been completed at the time the 45-day hold was imposed, the petition was timely.[3]

Hydrick attempts to distinguish *Lucas*. There, the hold was imposed before the evaluations by two psychologists were completed. But nothing in *Lucas* suggests that its decision was based on whether the hold was imposed during or after the evaluations were completed.

Hydrick's reliance on *People v. Superior Court* (*Small*) (2008) 159 Cal.App.4th 301 is misplaced. There the SVP petition was not filed until one day after the 45-day hold period had expired. The court held that the untimely filing was not due to a good faith mistake of law, and upheld the trial court's dismissal of the petition. Here the petition was filed within the 45-day hold period. The trial court properly refused to dismiss the petition.

## II

[[Hydrick contends the trial court erred in allowing victim impact evidence.

At trial one victim was impeached with several criminal convictions. The victim testified when his mother learned he was being molested, she sent him to a hospital for adolescents where he stayed for two years. Over Hydrick's objection as to relevance and undue prejudice, the trial court allowed the victim to testify how his life had been since the hospitalization. The victim testified:

---

[3] Section 6601, subdivision (i) provides: "If the county's designated counsel concurs with the recommendation, a petition for commitment shall be filed in the superior court of the county in which the person was convicted of the offense for which he or she was committed to the jurisdiction of the Department of Corrections and Rehabilitation. The petition shall be filed, and the proceedings shall be handled, by either the district attorney or the county counsel of that county. The county board of supervisors shall designate either the district attorney or the county counsel to assume responsibility for proceeding under this article."

6

"A. It's been rough and bumpy.

"Q. In what ways?

"A. I had a lot of anger issues back then and stuff and trust and family and just everybody. I was angry about being placed in those places and probably carried a lot of that with me the rest of my life and then I later developed a substance abuse addiction, alcohol.

"Q. Have you had some arrests and convictions, criminal convictions during the past 26 years or so?

"A. Yes, ma'am."

Relevant evidence includes evidence relevant to the credibility of a witness. (Evid. Code § 210.) Here the evidence is relevant to the witness's credibility. It gave context to the convictions that were used to impeach the witness's credibility.

The trial court has the discretion to exclude even relevant evidence if its probative value is substantially outweighed by the probability it will create a substantial danger of extreme prejudice. (Evid. Code § 352.) Here the probative value is great. Hydrick denied he molested anyone. The credibility of the victim witness was crucial to the People's case. The court did not abuse its discretion in finding that the probative value of the evidence outweighed the substantial danger of undue prejudice.

### III

Hydrick contends the trial court erred in excluding testimony that he faced a life sentence under the three strikes law if he reoffended.

At trial Hydrick's counsel asked Hydrick if he was aware that his prior convictions constituted strikes within the meaning of the three strikes law. Hydrick said "no." Then his counsel attempted to ask whether he knew that if he were to commit a crime in the future he would be subject to a 25-years-to-life term. The People objected. After an unreported sidebar conference, the trial court stated it sustained the People's objection under Evidence Code section 352.

Hydrick argues the evidence was relevant to his risk of reoffending. He relies on *People v. O'Shell* (2009) 172 Cal.App.4th 1296. There the Court of Appeal concluded the trial court erred in excluding as irrelevant the defendant's proposed testimony that "he was particularly motivated to seek treatment and avoid reoffending because he faced a life term if he reoffended under the Three Strikes law." (*Id.* at p. 1306.) The court rejected the People's argument that the evidence would have been excluded under Evidence Code section 352. The court pointed out that the trial court did not exercise its discretion under section 352. (*Id.* At p. 1309.)

Here, in contrast to *O'Shell*, Hydrick testified he was not aware his prior convictions constitute strikes, he denied having molested anyone, and he refused to seek treatment because he did not believe he had a problem. If there is any relevance to Hydrick's proposed testimony, the trial court was well within its discretion in excluding it under Evidence Code section 352.]]

The judgment is affirmed.

CERTIFIED FOR PARTIAL PUBLICATION.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

8

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General of California, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.