[No. G046502. Fourth Dist., Div. Three. Jan. 28, 2013.]

LAWRENCE BROWN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Frank Ospino, Public Defender, Jean Wilkinson, Chief Deputy Public Defender, Sharon Petrosino and Mark S. Brown, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Real Party in Interest.

## Opinion

## FYBEL, J.—

### Introduction

By petition for writ of mandate/prohibition, Lawrence Brown challenges the respondent court's order denying his motion to dismiss a commitment petition filed against him pursuant to the Sexually Violent Predator Act, Welfare and Institutions Code section 6600 et seq. (SVPA).[1] He argues the court erred because the SVPA commitment petition was not filed while he was in lawful custody under section 6601, subdivision (a)(2) (section 6601(a)(2)).

When the SVPA commitment petition was filed, Brown was in custody pursuant to a 45-day hold under section 6601.3, subdivision (a) (section 6601.3(a)). He contends the hold was invalid because it was issued without the requisite good cause defined in section 6601.3, subdivision (b) (section 6601.3(b)) and was not the result of a good faith mistake of fact or law.

We conclude good cause under section 6601.3(b) supported the 45-day hold and therefore deny Brown's petition for writ of mandate/prohibition. Brown had been returned to custody following revocation of his parole and sentenced to a 90-day term for a parole violation. As a result, when

---

[1] Further code references are to the Welfare and Institutions Code unless otherwise indicated.

Brown was referred for a full evaluation under section 6601, subdivisions (c) through (i), there were fewer than 45 days to complete that evaluation before his scheduled release from custody. We do not address whether the 45-day hold was granted based on a good faith mistake of fact or law.

### OVERVIEW OF THE SVPA SCREENING AND EVALUATION PROCESS

■ The SVPA provides for involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be a sexually violent predator. (*People v. Yartz* (2005) 37 Cal.4th 529, 534 [36 Cal.Rptr.3d 328, 123 P.3d 604].) The SVPA "was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society." (*People v. Allen* (2008) 44 Cal.4th 843, 857 [80 Cal.Rptr.3d 183, 187 P.3d 1018]; see *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584] [SVPA proceedings are designed "to provide 'treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior"].) " '[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action.' " (*People v. Yartz, supra*, at p. 536.)

■ A sexually violent predator is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A " '[d]iagnosed mental disorder' " is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

■ The procedure for commitment under the SVPA begins with an initial screen in which the Secretary of California's Department of Corrections and Rehabilitation (CDCR) determines whether a person in CDCR custody might be a sexually violent predator. (§ 6601, subd. (a)(1).) If the secretary determines the person might be a sexually violent predator, the secretary refers that person to the next level evaluation. (*Ibid.*) This referral must be made at least six months before that person's scheduled date for release from prison unless (1) the person was received by the CDCR with less than nine months remaining on his or her sentence or (2) the person's release date is modified by judicial or administrative action. (*Ibid.*)

After the secretary's referral, the person is screened by the CDCR and the Board of Parole Hearings (BPH) in accordance with "a structured screening instrument developed and updated by the State Department of State Hospitals in consultation with the [CDCR]." (§ 6601, subd. (b); see *People v. Hurtado* (2002) 28 Cal.4th 1179, 1183 [124 Cal.Rptr.2d 186, 52 P.3d 116].) "If as a result of this screening it is determined that the person is likely to be a sexually violent predator, the [CDCR] shall refer the person to the State Department of State Hospitals for a full evaluation of whether the person meets the criteria in Section 6600." (§ 6601, subd. (b).)

The procedures for a full evaluation are set forth in section 6601, subdivisions (c) through (i). Under section 6601, subdivisions (c) and (d), the person is evaluated by two practicing psychiatrists or psychologists, or by one of each profession, in accordance with a standardized assessment protocol developed and updated by the State Department of State Hospitals, known at the time of Brown's commitment as the State Department of Mental Health (DMH). If both evaluators find the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," then the DMH forwards a request to file a petition for commitment to the county of the person's last conviction. (§ 6601, subd. (d).) If the county's designated counsel concurs with the recommendation, he or she files a petition for commitment in the superior court. (§ 6601, subd. (i).)

If one of the two professionals performing the evaluation does not conclude the person meets the criteria for commitment as a sexually violent predator, and the other concludes the person does meet those criteria, then the DMH "shall arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).) If an evaluation by two independent professionals is conducted, a petition for commitment may be filed only if both concur the person meets the criteria for commitment as a sexually violent predator. (§ 6601, subd. (f).)

An SVPA commitment petition may be filed only while the person is in lawful custody pursuant to a determinate prison term, parole revocation term, or "hold placed pursuant to Section 6601.3." (§ 6601(a)(2).) However, "[a] petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law." (*Ibid.*)

Section 6601.3(a) reads: "Upon a showing of good cause, the [BPH] may order that a person referred to the State Department of State Hospitals pursuant to subdivision (b) of Section 6601 remain in custody for no more

than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601." Section 6601.3(b) defines "good cause" as follows: "For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601."

### ALLEGATIONS OF THE PETITION AND THE RETURN

In 1988, Brown was sentenced to a term of 49 years in prison after a jury convicted him of kidnapping and committing lewd or lascivious acts by force upon a child under 14 years of age. In April 2010, he was released from prison on parole. The next month, he was taken back into custody on a parole, violation, and, after a parole revocation hearing, was returned to CDCR custody. In September 2010, before his release from custody for the parole violation, Brown underwent a "Level II Clinical Screen" by the DMH.

On October 3, 2010, the BPH placed a 45-day hold on Brown pursuant to section 6601.3(a). This hold expired at 12:00 midnight on November 17, 2010. Brown was released from CDCR custody before midnight on that date. Later that same day, he was arrested and placed in custody for failing to report immediately to his parole officer.

On November 18, 2010, the DMH sent the district attorney a request that an SVPA commitment petition naming Brown be filed based on the receipt of two concurring positive evaluations that had been conducted before he was released from custody for his parole violations.

On December 22, 2010, a parole revocation hearing was held on Brown's November 17 parole violations. Of the two charges alleged, Brown admitted one, and the other was dismissed based on a finding the parole condition was not reasonably related to the commitment offense. Brown's parole was ordered revoked, he was sentenced to three months in custody, and he was returned immediately to custody. His release date was February 15, 2011.

On January 18, 2011, while Brown was in custody serving his parole revocation sentence, the district attorney filed a petition for commitment under the SVPA (the First SVPA Commitment Petition) seeking to commit him as a sexually violent predator. We granted the district attorney's request to take judicial notice of the official court docket for the First SVPA Commitment Petition, which was case No. M13906.

Once Brown was returned to custody for his parole revocation sentence, the SVPA screening and evaluation procedures under section 6601 were again triggered. On December 28, 2010, the Secretary of the CDCR determined Brown might be a sexually violent predator and referred him to the BPH for screening.

On January 3, 2011, the DMH completed its screening of Brown on behalf of the BPH and referred him to a full evaluation pursuant to section 6601, subdivisions (c) through (e). Laljit Sidhu, Ph.D., interviewed Brown and, in an evaluation dated January 20, 2011, concluded he did not meet the requirements for commitment as a sexually violent predator. The other DMH evaluator, Amy Phenix, Ph.D., interviewed Brown but did not complete her evaluation until February 16, 2011, the day after Brown's scheduled release from custody.

Meanwhile, on February 7, 2011, the respondent court reviewed the First SVPA Commitment Petition and found probable cause to believe Brown was likely to engage in sexually violent predatory criminal behavior upon his release from custody. As a result, the court ordered Brown to remain in custody pending a probable cause hearing.

On February 11, 2011, the DMH requested the BPH to place a 45-day hold on Brown effective February 15, 2011. Ann Ricard, the BPH deputy commissioner who granted the hold request, concluded good cause existed for a 45-day hold because "a. Mr. Brown had a qualifying offense under the SVP statutes; [¶] b. DMH's Level II Clinical Screen indicated that Mr. Brown should be referred for another set of SVP evaluations; [and] [¶] c. BPH had jurisdiction to place the hold." The hold was effective from 12:01 a.m. on February 15, 2011, through 12:00 midnight on April 1, 2011.

Dr. Phenix completed her evaluation of Brown and concluded he met the criteria for commitment as a sexually violent predator. Due to the difference of opinion between Dr. Sidhu and Dr. Phenix, two independent evaluators were appointed pursuant to section 6601, subdivision (e). On March 18, 2011, Christopher Matosich, Ph.D., completed an evaluation of Brown and concluded he met the criteria for commitment as a sexually violent predator. On March 21, 2011, Jesus Padilla, Ph.D., completed his evaluation of Brown and reached the same conclusion. Based on these concurring evaluations, the DMH sent the district attorney a second request to file a petition to commit Brown under the SVPA.

On March 28, 2011, the district attorney filed the underlying SVPA petition (the Second SVPA Commitment Petition), which was assigned case No. M14020. Based on the pendency of the First SVPA Commitment

Petition, Brown filed a motion to dismiss and a demurrer to the Second SVPA Commitment Petition. In response, the district attorney moved to dismiss the First SVPA Commitment Petition. Brown did not object, and the respondent court dismissed the First SVPA Commitment Petition.

In June 2011, Brown filed a motion to dismiss the Second SVPA Commitment Petition on the ground he was not in lawful custody when that petition was filed because the 45-day hold was invalid. The district attorney opposed the motion and submitted a declaration from Ricard.

At the hearing on December 16, 2011, the respondent court denied Brown's motion to dismiss on the ground the 45-day hold was the result of a good faith mistake of law under section 6601(a)(2). In February 2012, Brown filed this petition for writ of mandate/prohibition. We issued an order to show cause, in response to which the district attorney filed a return.

## DISCUSSION

An SVPA commitment petition may be filed only while the person is in lawful custody pursuant to a determinate sentence, parole revocation term, or hold under section 6601.3. (§ 6601(a)(2).) Brown was scheduled to be released from custody on February 15, 2011. The Second SVPA Commitment Petition was filed on March 28, 2011. He was in custody when the Second SVPA Commitment Petition was filed only pursuant to a 45-day hold under section 6601.3. He contends the 45-day hold under section 6601.3 was invalid because it was not supported by good cause, and, therefore, he was not in lawful custody when the Second SVPA Commitment Petition was filed.

At the outset, the district attorney argues we need not address whether the 45-day hold placed on February 15, 2011, was supported by good cause because, when the Second SVPA Commitment Petition was filed, Brown was in lawful custody under the jurisdiction of the CDCR pursuant to the First SVPA Commitment Petition. But, as Brown points out, section 6601(a)(2) expressly states an SVPA commitment petition may be filed under section 6601 only if the person was in custody pursuant to a "determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed." (§ 6601(a)(2).) Custody under section 6601(a)(2) does not include custody pursuant to an SVPA commitment petition.

The grounds for granting the 45-day hold in this case were set forth in the Ricard declaration submitted in opposition to Brown's motion to dismiss the Second SVPA Commitment Petition. Ricard concluded good cause supported a 45-day hold because "Brown had a qualifying offense under the SVP statutes" the "DMH's Level II Clinical Screen indicated . . . Brown

should be referred for another set of SVP evaluations," and the "BPH had jurisdiction to place the hold." She granted the hold "in the interests of public safety."

The grounds identified in the Ricard declaration as constituting good cause for granting the 45-day hold are similar to the criteria set forth in California Code of Regulations, title 15, section 2600.1, subdivision (d). It defined "good cause" as "[s]ome evidence" that the person has a qualifying conviction and "is likely to engage in sexually violent predatory criminal behavior." (*Id.*, tit. 15, § 2600.1, subd. (d)(2).)[2] At the time the hold was placed, in February 2011, section 6601.3(b) set forth the relevant criteria for granting a 45-day hold. Section 6601.3(b), which became effective on January 1, 2011, states: "For purposes of this section, good cause means circumstances where there is a recalculation of credits or a restoration of denied or lost credits, a resentencing by a court, the receipt of the prisoner into custody, or equivalent exigent circumstances which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601."

■ Ricard was mistaken to the extent she relied on the regulation rather than the newly effective section 6601.3(b) in granting the 45-day hold. The language of a statute controls over an inconsistent regulation. (*Cooper v. Swoap* (1974) 11 Cal.3d 856, 864 [115 Cal.Rptr. 1, 524 P.2d 97]; *Nevada County Office of Education v. Riles* (1983) 149 Cal.App.3d 767, 773 [197 Cal.Rptr. 152].) We conclude, however, that any mistake was harmless.

■ Section 6601.3(b) limits good cause for a 45-day hold to these four circumstances: (1) there is "a recalculation of credits or a restoration of denied or lost credits"; (2) there is "a resentencing by a court"; (3) "the receipt of the prisoner into custody"; or (4) "equivalent exigent circumstances." For purposes of analysis only, we will assume the phrase "which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i), inclusive, of Section 6601" (§ 6601.3(b)) applies to all four circumstances, not just the final one.[3]

---

[2] In *In re Lucas* (2012) 53 Cal.4th 839, 845 [137 Cal.Rptr.3d 595, 269 P.3d 1160], the California Supreme Court concluded California Code of Regulations, title 15, section 2600.1, subdivision (d) was invalid "because it links good cause to the wrong showing" (*In re Lucas, supra*, at p. 850). The *Lucas* decision was rendered after Ricard granted the 45-day hold.

[3] The phrase "which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i)" (§ 6601.3(b)) is placed at the very end of the sentence, is not preceded by a comma, and uses the third person plural form of "result." The grammatical consequence would be, it seems, that the phrase modifies only the fourth circumstance, not the first three or the initial use of the word "circumstances" following the word "means." If we were to interpret section 6601.3(b) based on grammar

When the hold was granted, Brown had been received into custody for parole revocation. He therefore fell within circumstance (3) ("the receipt of the prisoner into custody") of section 6601.3(b). Once Brown was returned to custody on November 17, 2010, the initial screening process under section 6601, subdivision (a)(1) recommenced. On December 28, 2010, the Secretary of the CDCR determined Brown might be a sexually violent predator and should be referred to the BPH for screening. There is no evidence of delay in making that determination. Within one week, on January 3, 2011, Brown was referred for a full evaluation pursuant to section 6601, subdivisions (c) through (e). On that date—January 3, 2011—fewer than 45 days remained before Brown's scheduled release date of February 15, 2011.

 We do not interpret section 6601.3(b) as limiting good cause based on receipt into custody to situations in which the person is received into custody for a term of 45 days or fewer. Section 6601.3 does not impose that limitation. Nor does section 6601.3(b) limit the 45-day hold to situations in which fewer than 45 days remain to complete both the screening and evaluation process under section 6601. Instead, section 6601.3(b) permits a 45-day hold if the result of the circumstance is that fewer than 45 days remain to undertake the evaluation process under section 6601, subdivisions (c) through (i). Before the evaluation process under section 6601, subdivisions (c) through (i) is conducted, the person first must be screened by the CDCR, then screened by the BPH, and then referred to the DMH. The screening process cannot begin until the person is returned to custody. Thus, we conclude, section 6601.3(b) allows a 45-day hold when the person is received into custody for a parole violation and, at the time of referral to the DMH for full evaluation under section 6601, subdivisions (c) through (i), fewer than 45 days remain before the person is to be released from custody.

The legislative history of the 45-day hold under section 6601.3 supports our interpretation. When originally added to the SVPA as an urgency " 'clean up' " provision shortly after the effective date of the SVPA itself, section 6601.3 did not include a good cause requirement but authorized the Board of Prison Terms (now the BPH) to order any person referred to the DMH for a sexually violent predator evaluation held for an additional 45 days " 'unless his or her scheduled date of release falls more than 45 days after referral.' " (*In re Lucas, supra*, 53 Cal.4th at pp. 856–857; see Stats. 1996, ch. 4, § 2, p. 16; Stats. 1998, ch. 19, § 1, p. 145 [reenacting former § 6601.3 after Jan. 1,

---

alone, we might be compelled to conclude the phrase "which result in there being less than 45 days prior to the person's scheduled release date for the full evaluation described in subdivisions (c) to (i)" applies only to the fourth circumstance. Were that the case, Brown's return to custody would in itself justify the 45-day hold, regardless whether fewer than 45 days remained to complete the evaluation process.

1998 sunset provision].)[4] The Youth and Adult Correctional Agency, in a report to the Governor, urging him to sign the bill, justified the good cause provision due to the impossibility of identifying and fully evaluating all possible sexually violent predators before their release dates during the law's first year of operation. (Cal. Youth and Adult Correctional Agency, Enrolled Bill Rep. on Assem. Bill No. 1496 (1995–1996 Reg. Sess.) Jan. 25, 1996, p. 2.) The report explained, "there will always be inmates whose release dates are advanced through judicial or administrative action so as to collapse the 6 month lead time, either before the process of referral has begun or before a probable cause determination can be made." (*Ibid.*; see Assem. Com. on Public Safety, Analysis of Sen. Bill No. 536 (1997–1998 Reg. Sess.) as proposed to be amended in committee, for hearing July 8, 1997, p. 1 [45-day extension of release date necessary "in those circumstances when the restoration of [time] credits to the person's term of imprisonment renders the normal time frames for SVP commitment impracticable"].)

The good cause requirement was added in 2000 by Senate Bill No. 451 (1999–2000 Reg. Sess.), which also eliminated the restriction on holding the person past his or her release date if that date fell more than 45 days after referral. (*In re Lucas, supra,* 53 Cal.4th at p. 857, citing Stats. 2000, ch. 41, § 1, p. 129.)[5] Senate Bill No. 451 (1999–2000 Reg. Sess.) did not define "good cause." However, according to the analysis of the Assembly Committee on Appropriations, the purpose of the amendment was to "clarif[y] that an inmate referred to the SVP[A] process may be detained 45 days beyond the scheduled release date, in order to cover situations in which an inmate's release date may be unexpectedly moved up, or when a parole revocation term allows insufficient time to complete the evaluation process." (Assem. Com. on Appropriations, Analysis of Sen. Bill No. 451 (1999–2000 Reg. Sess.) as proposed to be amended Apr. 12, 2000, pp. 1–2, underscoring omitted.)

Senate Bill No. 1201 (2009–2010 Reg. Sess.) added subdivision (b) to section 6601.3 to make explicit the implicit definition of good cause in the

---

[4] The original version of section 6601.3(a) provided: "The Board of Prison Terms may order that a person referred to the [DMH] pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days for full evaluation pursuant to subdivisions (c) to (h), inclusive, of Section 6601, unless his or her scheduled date of release falls more than 45 days after referral." (Stats. 1996, ch. 4, § 2, p. 16.)

[5] As amended in 2000, former section 6601.3 provided: "Upon a showing of good cause, the [BPH] may order that a person referred to the [DMH] pursuant to subdivision (b) of Section 6601 remain in custody for no more than 45 days beyond the person's scheduled release date for full evaluation pursuant to subdivisions (c) to (i), inclusive, of Section 6601." (Stats. 2000, ch. 41, § 1, p. 129.)

2000 amendment to section 6601.3.[6] (*In re Lucas, supra*, 53 Cal.4th at p. 857, citing Stats. 2010, ch. 710, § 5.) Section 6601.3(b) defines good cause to include the circumstance in which there is insufficient time to complete the full evaluation following "the receipt of the prisoner into custody."

### DISPOSITION

The petition for writ of mandate/prohibition is denied.

Bedsworth, Acting P. J., and Aronson, J., concurred.

Petitioner's petition for review by the Supreme Court was denied May 1, 2013, S209161. Kennard, J., and Werdegar, J., were of the opinion that the petition should be granted.

---

[6] The addition of subdivision (b) to section 6601.3 was not specifically addressed in any of the committee analyses of Senate Bill No. 1201 (2009–2010 Reg. Sess.) and was summarized without additional analysis in the Legislative Counsel's Digest. The primary purpose of Senate Bill No. 1201 (2009–2010 Reg. Sess.) was to require the CDCR to evaluate, using the state-authorized risk assessment tool for sex offenders, those persons convicted of certain sex offenses in another state or federal court who were subsequently transferred to California for parole supervision. (See Stats. 2010, ch. 710, § 1.)